MICHAEL H. RUBIN, State Bar No. 214636
LAUREN GALLO WHITE, State Bar No. 309075
PETER C. HOLM, State Bar No. 299233
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1 Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
mrubin@wsgr.com; lwhite@wsgr.com;
pholm@wsgr.com

ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
aweibell@wsgr.com

Attorneys for Defendant
BJC HEALTHCARE

[Additional counsel representing other parties joining this brief are listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WINSTON SMITH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., et al.,<br><br>Defendants. | Case No. 5:16-cv-01282-EJD<br><br>**HEALTHCARE DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**<br><br>Date: April 13, 2017<br>Time: 9:00 a.m.<br>Dept.: 4, 5th Floor<br>Before: Hon. Edward J. Davila |

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

COUNTERSTATEMENT OF FACTS ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

I. NO INJUNCTION CAN ISSUE BECAUSE THE COURT LACKS JURISDICTION. ..... 5

A. The Court Lacks Personal Jurisdiction over the Healthcare Defendants. ..... 5

1. There Is No General Jurisdiction. ..... 5

2. There Is No Specific Jurisdiction. ..... 6

B. The Eleventh Amendment Bars Jurisdiction over MD Anderson. ..... 8

C. The Court Lacks Subject Matter Jurisdiction. ..... 8

II. PLAINTIFFS FAIL TO SHOW A LIKELIHOOD OF IRREPARABLE HARM ..... 10

III. PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THEIR CLAIMS. ..... 12

A. Plaintiffs' Motion is Based on Inadmissible and Unhelpful Evidence. ..... 13

1. Plaintiffs' Purported Expert Concedes They Have No Claim. ..... 13

2. Plaintiffs' Purported Expert Declaration Is Inadmissible. ..... 14

B. Plaintiffs' Claims Fail Because They Do Not Involve Protected or Sensitive Information. ..... 16

C. Plaintiffs' Claims Fail Because Plaintiffs Consented to the Conduct at Issue. ..... 17

D. Plaintiffs' Claims Fail on Their Individual Elements. ..... 19

IV. THE BALANCE OF EQUITIES DISFAVORS INJUNCTIVE RELIEF ..... 20

V. THE PUBLIC INTEREST DISFAVORS INJUNCTIVE RELIEF ..... 22

CONCLUSION ..... 24

## TABLE OF AUTHORITIES

### CASES

*523 IP LLC v. CureMD.com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014) ....16

*Am. Auto. Ass'n, Inc. v. Darba Enters., Inc.*, No. C 09-00510 SI, 2009 U.S. Dist. LEXIS 37564 (N.D. Cal. Apr. 21, 2009) ....6

*Am. Freedom Def. Initiative v. King Cty.*¸796 F.3d 1165 (9th Cir. 2015), *cert denied*, 136 S. Ct. 1022 (2016) ....12

*Am. Greener Techs. Inc. v. Enhanced Life Water Solutions, LLC*, No. CV-15-02491-PHX-JJT, 2016 U.S. Dist. LEXIS 52249 (D. Ariz. Mar. 23, 2016) ....10

*Backhaut v. Apple Inc.*, No. 14-CV-02285-LHK, 2015 U.S. Dist. LEXIS 107519 (N.D. Cal. Aug. 13, 2015) ....21

*Bayline Partners L.P. v. Weyerhaeuser Co.*, No. C-93-2828-VRW, 1994 U.S. Dist. LEXIS 19638 (N.D. Cal. Feb. 17, 1994) ....23

*BoomerangIt, Inc v. ID Armor, Inc.*, No. 5:12-cv-0920 EJD, 2012 U.S. Dist. LEXIS 86382 (N.D. Cal. June 21, 2012) ....11

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ....7

*Brisette v. Arnold*¸ No. 2:16-cv-0208 GEB GGH P, 2016 U.S. Dist. LEXIS 56308 (E.D. Cal. Apr. 26, 2016) ....10

*Cabrera v. Cordis Corp.*, 134 F.3d 1418 (9th Cir. 1998) ....14

*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ....10

*Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, 55. F. Supp. 2d 1024 (N.D. Cal. 1999) ....15, 16

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) ....20

*Carr v. Allied Waste Sys.*, No. C 10-0715 PJH, 2011 U.S. Dist. LEXIS 101658 (N.D. Cal. Sept. 8, 2011) ....12

*Carter v. Reese*, No. C 12-5537 MMC, 2012 U.S. Dist. LEXIS 163000 (N.D. Cal. Nov. 9, 2012) ....4

*Cave Consulting Grp., LLC v. OptumInsight, Inc.*, No. 5:11-cv-00469 EJD, 2016 U.S. Dist. LEXIS 120932 (N.D. Cal. Sept. 7, 2016) ....20

*Celgard, LLC v. LG Chem, Ltd.*, 624 F. App'x 748 (Fed. Cir. 2015) ....3

*Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181 (C.D. Cal. 2007) ....21

*Concrete Washout Sys., Inc. v. Terrell Moran, Inc.*, No. 2:14-0830 WBS CKD, 2015 U.S. Dist. LEXIS 22936 (E.D. Cal. Feb. 25, 2015) ....7

*Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134 (C.D. Cal. 2009) .....................23

*CSNK Working Capital Fin. Corp. v. Baxter, Bailey & Assocs.*, No. 5:16-cv-04234-EJD, 2016 U.S. Dist. LEXIS 111011 (N.D. Cal. Aug. 19, 2016) .........................10

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) .....................................................6

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) .................................................................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .........................................14

*DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871 (N.D. Cal. 2012) ....................................6, 7

*Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) .......................................14

*FireClean, LLC v. Tuohy*, No. 1-16-cv-0294, 2016 U.S. Dist. LEXIS 96294 (E.D. Va. July 21, 2016) .....................................................................................7

*Foster v. Essex Prop., Inc.*, No. 14-CV-05531-EJD, 2017 WL 264390 (N.D. Cal. Jan. 20, 2017) .....................................................................................9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000) ..............................9

*Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014), *aff'd*, 779 F.3d 991 (9th Cir. 2015) .....................................................................20

*Garcia v. Google Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc) ......................................... *passim*

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ....................................5

*Griswold v. Conn*. 381 U.S. 479 (1965) ..................................................................19

*Hanginout, Inc. v. Google Inc.*, 54 F. Supp. 3d 1109, 1132 (S.D. Cal. 2014) ..............................11

*Hodgers-Durgin v. De La Vin*a, 199 F.3d 1037 (9th Cir. 1999) .........................................21

*Holland Am. Line, Inc. v. Wartsila N. Am. Inc.*, 485 F.3d 450 (9th Cir. 2007)) .............................8

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010) .........................................21

*In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015) ................1, 12, 20

*In re Google Cookie Inc. Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015), *cert denied*, 137 S. Ct. 36 (2016) .............................................19, 20

*In re Google, Inc. Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) .....................................................................9

*In re Horizon Healthcare Services Data Breach Litig.*, --- F.3d ----, 2017 U.S. App. LEXIS 1019 (3d Cir. Jan. 20, 2017) ..................................................9

*In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...............................................................9, 11

*Kremen v. Cohen*, No. 5:11-cv-05411-LHK, 2011 U.S. Dist. LEXIS 141273 (N.D. Cal. Dec. 7, 2011) .....................................................................4

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ....................15

*LaCourt v. Specific Media, Inc.*, No. SACV 10-1256 GW JCGx, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)....................10

*Lidie v. State of Cal.*, 478 F.2d 552 (9th Cir. 1973)....................21

*Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ....................9, 11

*Lukov v. Schindler Elevator Corp.*, No. 5:11-cv-00201 EJD, 2012 U.S. Dist. LEXIS 88415 (N.D. Cal. June 26, 2012)....................15

*Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014) ....................5

*Matus v. Premium Nutraceuticals, LLC*, No. 15-cv-01851, 2016 U.S. Dist. LEXIS 70878 (C.D. Cal. May 31, 2016) ....................6

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011)....................6

*Miller v. LCF, Inc.*, No. C-94-3372-VRW, 1994 U.S. Dist. LEXIS 17239 (N.D. Cal. Nov. 18, 1994)....................23

*Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053 (9th Cir. 2002) ....................15

*Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260 (9th Cir. 1998) ....................19

*NuboNau, Inc. v. NB Labs, Ltd.*, No. 10cv2631-LAB (BGS), 2012 U.S. Dist. LEXIS 32963 (S.D. Cal. Mar. 9, 2012) ....................6

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ....................21

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F. 2d 1374 (9th Cir. 1985)....................11

*Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971)....................23

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985) ....................4

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984)....................8

*Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437 (1952) ....................6

*Pooka Pooka LLC v. Safari Beach Club LLC*, No. C-12-03817 DMR, 2013 U.S. Dist. LEXIS 56900 (N.D. Cal. Apr. 17, 2013) ....................7

*Rathbun v. IndyMac Mortg. Servs.*, 916 F. Supp. 2d 1174 (D. Mont. 2013)....................13

*Riley v. California*, 134 S. Ct. 2473 (2014) ....................23

*Saucier v. Katz*, 533 U.S. 194 (2001) ....................8

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004)....................6

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ....................9

*Stormans, Inc. v. Selecky*, 586 F.3 1109 (9th Cir. 2009) ....................22

*Sussman v. Am. Broad Cos.*, 186 F.3d 1200 (9th Cir. 1999) ....................20

*United States v. Redlightning*, 624 F.3d 1090 (9th Cir. 2010) ....................14

*United States v. Scholl*, 166 F.3d 964 (9th Cir. 1999) ....................15

*Universal Semiconductor v. Tuoi Vo*, No. 16-cv-04778-EJD, 2016 U.S. Dist. LEXIS 164513 (N.D. Cal. Nov. 29, 2016) ....................10, 11, 12

*Van Patten v. Vertical Fitness Group LLC*, --- F.3d ----, 2017 U.S. App. LEXIS 1591 (9th Cir. Jan. 30, 2017) ....................9

*Van Wickler v. City of Santa Cruz/Santa Cruz Police Dep't*, No. CV-04-01792-JF, 2004 WL 2218371 (N.D. Cal. Oct. 1, 2004) ....................8

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ....................7

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ....................22

*Williby v. Hearst Corp.*, No. 5:15-cv-02538-EJD, 2016 U.S. Dist. LEXIS 142795 (N.D. Cal. Oct. 14, 2016) ....................11

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................... *passim*

*Wo of Ideafarm v. Mountain View Police Dep't*, No. 5-16-cv-06270-EJD, 2016 U.S. Dist. LEXIS 151401 (N.D. Cal. Nov. 1, 2016) ....................10

*Zepeda v. United States Immigration & Naturalization Serv.*, 753 F.2d 719 (9th Cir. 1983) ....................3


## STATUTES


18 U.S.C. § 2511(2)(d) ....................19

18 U.S.C. § 2520(b) ....................24

42 U.S.C. § 1320d-2(a)(2) ....................17

Cal. Penal Code § 631(a) ....................19


## RULES


45 C.F.R. § 160.103 ....................16, 17

45 C.F.R. § 164.514(b)(2)(i) ....................16

64 Fed. Reg. 59,918 (Nov. 3, 1999) ....................17

Fed. R. Evid. 901 ....................15

Fed. R. Evid. 702 ....................14, 16

## PRELIMINARY STATEMENT

Plaintiffs' motion for injunctive relief—filed a full seven months after their complaint and two months after Defendants' motion to dismiss was fully briefed—is a thinly veiled and improper effort to surreply to Defendants' motion to dismiss. Plaintiffs' failure to make this motion sooner exposes the absence of any real risk of irreparable injury. Indeed, the motion seeks to enjoin nothing more than the routine transmission of information associated with the browsing of public websites—a practice that this Court has previously upheld in a case premised on materially identical circumstances. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015). This does not amount to an emergency that warrants injunctive relief, nor does it provide a basis for any of the causes of action Plaintiffs assert. Consistent with that, Plaintiffs' own purported expert recognizes that "current U.S. law does little to forbid, control or punish this type of data collection." Declaration of Michael H. Rubin In Support of the Healthcare Defendants' Joint Opposition to Plaintiffs' Motion for Injunctive Relief (Rubin Decl.) ¶ 7. He expressly concedes: "It is *perfectly legal* to monitor what health websites an individual is visiting." *Id.* (emphasis added).

Even putting all of these dispositive deficiencies aside, no injunction may issue because the Court lacks personal jurisdiction over the out-of-state Healthcare Defendants and lacks subject matter jurisdiction over the case as a whole. Indeed, Plaintiffs lack standing because they fail to identify any injury whatsoever—they have put in no evidence of any pain, suffering, or economic loss resulting from the alleged disclosure to Facebook of their visits to the Healthcare Defendants' websites. In short, Plaintiffs come nowhere close to meeting their burden of showing a need for the "extraordinary remedy" of injunctive relief. Plaintiffs' motion should be denied.

## COUNTERSTATEMENT OF FACTS

Despite Plaintiffs' improper attempt to use this motion to introduce arguments and evidence that they failed to or could not include in their opposition to Defendants' motion to dismiss, the evidence presented with their motion adds nothing to the allegations in the Complaint. As Plaintiffs have alleged, their claims arise from basic web browsing functions with which this Court is already deeply familiar, and which do not support any legal cause of action. *See, e.g.*,

*Facebook Internet*, 140 F. Supp. 3d 922. As discussed in greater detail in Defendants' motion to dismiss (*see* ECF No. 96 (Mot. to Dismiss) at 3-9), and as Plaintiffs' purported expert agrees, the disclosures Plaintiffs challenge are based on the transmission of GET requests from users' web browsers to third-party servers responsible for loading website content. *See* Compl. ¶¶ 21-33; Libert Decl. ¶¶ 3-11, 19-21. Those requests are initiated by the users' requests to load webpages, and contain website location information—URLs or referrer headers—so that the website servers know where to load the requested content. Compl. ¶¶ 30-33; Libert Decl. ¶¶ 8, 12, 18-21. Website servers also sometimes create and send small text files, called cookies, which are stored on a user's browser so that the server can determine whether it has interacted with the browser before and can locate records about its history with the browser. Compl. ¶¶ 42-43, 45-46, 50, 85; Libert Decl. ¶ 25. Plaintiffs' purported expert declaration filed in support of their present motion does no more than needlessly corroborate this routine Internet functionality, which Defendants have already presumed true for purposes of moving to dismiss the Complaint.[1]

Plaintiffs' own declarations also do nothing to cure the procedural and substantive defects in their Complaint—namely, the Complaint still fails to establish jurisdiction and to state a cause of action. With respect to the procedural defects in their Complaint, Plaintiffs confirm that they are all residents of other states. *See* ECF Nos. 112, 113, 114 (executed in Kansas and Missouri). And Plaintiffs fail to provide evidence that any of their dealings with the Healthcare Defendants, who are also all residents of other states, took place in California. *See* Mot. to Dismiss at 15.

With respect to the substantive defects in their Complaint, Plaintiffs do not assert any facts that could somehow convert the allegedly disclosed communications into "personal health information." Plaintiffs do not, for example, allege to suffer from any medical diagnoses, or to

[1] By Mr. Libert's own admission, his testing did not actually corroborate many of Plaintiffs' allegations with respect to the Healthcare Defendants' websites. *See, e.g.* Libert Decl. ¶ 29 (noting "that 70% of pages did not disclose data to Facebook"). Not only that, but Mr. Libert agrees "that websites are dynamic." *Id.* ¶ 35 (noting that testing of one of the Healthcare Defendants' websites for Facebook code returned different results on July 16, 2016, July 29, 2016, and in September 2016). The inconstancy of website code provides yet another reason why the Court's resources would be ill-served by policing the Healthcare Defendants' websites. An injunction to "remove all source code" and "maintain the status quo" practically would require around-the-clock monitoring of HTML code across many hundreds of webpages. *See* ECF No. 110 (Pltfs.' Mot. for Injunctive Relief) at 1-2.

have sought treatment for their own medical conditions via the Healthcare Defendants' websites. In fact, Plaintiff Jane Doe II expressly disavows any such allegations, stating that she visited BJC's website for information about *her husband's* doctor—not her own. *See* ECF No. 114 (Doe II Decl.) ¶ 2; *see also* Compl. ¶¶ 175, 177.

Similarly, while Plaintiffs baldly claim not to have consented to the alleged transmissions to Facebook, they are bound by the Complaint's allegation that they entered into a "valid contract" with Facebook, including through their agreement to Facebook's Statement of Rights and Responsibilities, Data Policy, and Cookie Policy. *See* Compl. ¶¶ 58-59. These agreements, as well as the Healthcare Defendants' own disclosures, directly contradict Plaintiffs' asserted expectations of privacy in their public web browsing communications. To wit, Facebook discloses its receipt and use of data collected when its users visit third-party websites. *See, e.g.*, Compl., Ex. B at 2 ("We collect information when you visit or use third-party websites and apps that use our Services," "includ[ing] information about the websites and apps you visit, [and] your use of our Services on those websites and apps"). And the Healthcare Defendants likewise disclose that their websites contain third-party content, including third-party cookies, and that browser transmissions with their public websites may not be protected as private. *See* Mot. to Dismiss at 7-9 (citing Compl. ¶¶ 111, 127, 142, 156, 171, 184, 197; Compl., Exs. F-L); *e.g.*, *id.*, Ex. G §§ 4, 13 ("referrer headers of pages users view when they visit Cancer.net may be collected when they visit the site" and "the providers of third party Cookies may have the ability to link your activities on the Website with your browsing activities elsewhere on the Internet.").

In short, Plaintiffs' motion fails to show that their lawsuit concerns anything more than the routine transmission by out-of-state defendants of non-sensitive website browsing information that was fully disclosed to and consented to by Plaintiffs.

## LEGAL STANDARD

As a threshold matter, a court may not issue an injunction unless it has both "personal jurisdiction over the parties and subject matter jurisdiction over the claim." *Zepeda v. United States Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983); *accord Celgard, LLC v. LG Chem, Ltd.*, 624 F. App'x 748, 751 (Fed. Cir. 2015) ("A district court cannot enjoin a party if

it does not have jurisdiction[.]"). Consequently, where jurisdiction is lacking, a motion for preliminary injunction must be denied. *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1061 (9th Cir. 1985) (vacating preliminary injunction because district court incorrectly determined that it had personal jurisdiction over the defendant); *Carter v. Reese*, No. C 12-5537 MMC, 2012 U.S. Dist. LEXIS 163000, at *1-2 (N.D. Cal. Nov. 9, 2012) ("A district court has no authority to grant relief in the form of temporary restraining order and permanent injunction where it has no jurisdiction over the parties."); *Kremen v. Cohen*, No. 5:11-cv-05411-LHK, 2011 U.S. Dist. LEXIS 141273, at *24 (N.D. Cal. Dec. 7, 2011) ("the Court will not issue a preliminary injunction absent Plaintiff's showing that this Court has personal jurisdiction over Defendants"). As explained below, no injunction can issue here because there is no jurisdiction over the Healthcare Defendants or the claims against them.

Even if a court has jurisdiction to issue an injunction, the Supreme Court has warned that a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Garcia v. Google Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). A preliminary injunction should be denied where plaintiffs fail to make a clear demonstration that (1) they are likely to succeed on the merits of their claims; (2) they will likely suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiffs must clearly demonstrate each of these elements to qualify for preliminary injunctive relief. *Id.* at 23-24. Here, Plaintiffs motion should be denied because they fail to demonstrate even one.

## ARGUMENT

Plaintiffs' motion should be denied for the same reasons that their Complaint should be dismissed. First, the Court lacks jurisdiction over the out-of-state Healthcare Defendants, none of whom specifically targeted Plaintiffs in California. Second, Plaintiffs lack standing because they have not alleged any concrete injury-in-fact. Third, as demonstrated in part by their seven-month delay, Plaintiffs fail to show a risk of irreparable harm. Fourth, and despite Plaintiffs' repeated, bare assertions to the contrary—and as their own expert agrees—the communications in question

do not involve protected medical information under HIPAA or any other law. Fifth, Plaintiffs' own allegations establish they consented to the conduct at issue when they acknowledged that Facebook "collect[s] … information about the websites … you visit." Sixth, the Complaint does not clearly state any legally-cognizable claim against the Healthcare Defendants. Finally, neither the balance of hardships nor the public interest favors injunctive relief. Given these deficiencies, it is no surprise that Plaintiffs fail to meet their extraordinary burden under *Winter*.

## I. NO INJUNCTION CAN ISSUE BECAUSE THE COURT LACKS JURISDICTION.

As set forth in Defendants' joint Motion to Dismiss the Complaint, jurisdiction is lacking on three fronts: (i) the Court lacks personal jurisdiction over the out-of-state Healthcare Defendants, (ii) the Eleventh Amendment bars jurisdiction over MD Anderson, and (iii) the Court lacks subject matter jurisdiction over all claims asserted in this action. *See* Mot. to Dismiss at 9-15; ECF No. 109 (Reply ISO Mot. to Dismiss) at 2-8; ECF No. 121 (Opp. to Admin. Mot.) at 2-3.

### A. The Court Lacks Personal Jurisdiction over the Healthcare Defendants.

#### 1. There Is No General Jurisdiction.

The out-of-state Healthcare Defendants lack the contacts with California required to be subject to general jurisdiction here, according to Plaintiffs' own allegations. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 760-61 (2014) (general jurisdiction exists only where the defendants' contacts with the forum State are "so 'continuous and systematic' as to render them essentially at home in the forum State") (citation omitted); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) (same). None of the Healthcare Defendants are incorporated or headquartered in California, and Plaintiffs allege no other facts from which the Court reasonably could conclude that any of the Defendants have "continuous and systematic general business contacts" such that they are "essentially at home in" California to meet the *Daimler* standard.[2] *See also, e.g., Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (holding *Daimler* test not met where the defendant "has no offices, staff, or other physical

[2] American Cancer Society's challenge is also based upon its forum selection clause.

presence in California," and where its "California contacts are minor compared to its other worldwide contacts"); *cf. Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952) (general personal jurisdiction over non-resident defendant appropriate where corporation moved its principal business location to Ohio during World War II).

**2. There Is No Specific Jurisdiction.**

There also is no specific jurisdiction over the Healthcare Defendants, which can only attach when a non-resident "purposefully direct[s] his activities or consummate[s] some transaction with the forum or a resident thereof; or perform[s] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Under well-established Ninth Circuit precedent, there is no specific jurisdiction over a defendant "merely because he operates a website which can be accessed there." *Am. Auto. Ass'n, Inc. v. Darba Enters., Inc.*, No. C 09-00510 SI, 2009 U.S. Dist. LEXIS 37564, at *11 (N.D. Cal. Apr. 21, 2009) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997)); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (requiring plaintiff to prove "'something more'—conduct directly targeting the forum," to find minimum contacts); *Matus v. Premium Nutraceuticals, LLC*, No. 15-cv-01851, 2016 U.S. Dist. LEXIS 70878, at *9-10 (C.D. Cal. May 31, 2016) ("Absent 'something more' than the maintenance of a minimally interactive website, Plaintiff has not met its burden to satisfy even the purposeful availment prong of the specific jurisdiction test.").

Here, plaintiffs claim specific jurisdiction over the Healthcare Defendants exists merely because their websites allegedly included code provided by Facebook, which is headquartered in California. *See* ECF No. 105 (Opp. to Mot. to Dismiss) at 11-13. Courts, however, have repeatedly and expressly rejected the argument that mere use of the Facebook service to accomplish the conduct challenged by the plaintiff is sufficient to subject the defendant to jurisdiction in California. *See DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 883 (N.D. Cal. 2012) (use of Facebook account to infringe plaintiff's rights is insufficient basis to subject defendant to jurisdiction in California); *NuboNau, Inc. v. NB Labs, Ltd.*, No. 10cv2631-LAB (BGS), 2012 U.S.

Dist. LEXIS 32963, at *23 (S.D. Cal. Mar. 9, 2012) ("the Court doesn't find that merely engaging … Facebook to promote one's business constitutes purposeful direction at California, simply because … Facebook happen[s] to be based there"); *Pooka Pooka LLC v. Safari Beach Club LLC*, No. C-12-03817 DMR, 2013 U.S. Dist. LEXIS 56900, at *14-16 (N.D. Cal. Apr. 17, 2013) (same); *FireClean, LLC v. Tuohy*, No. 1-16-cv-0294, 2016 U.S. Dist. LEXIS 96294, at *23 & n.12 (E.D. Va. July 21, 2016) (Facebook code cannot provide a basis for personal jurisdiction given its ubiquity).

Personal jurisdiction over the Healthcare Defendants cannot be based on the location of Facebook's headquarters because the "'minimum contacts' analysis looks to the defendant's contacts *with the forum State itself*, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (emphasis added); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) (in false advertising case arising from automobile sale on eBay, "the issue is not whether the court has personal jurisdiction over the intermediary eBay but whether it has personal jurisdiction over an individual who conducted business over eBay." (quotation marks omitted)).

Moreover, while Facebook may be headquartered in California, this has no bearing on the location of Facebook's data centers where the alleged referer headers at issue here would have been sent. Plaintiffs have not alleged any facts or introduced any evidence purporting to show transmission by the Healthcare Defendants to California. Even if they had, Plaintiffs do not dispute the Healthcare Defendants' websites are largely passive and do not target California. *See, e.g.*, *Bourne*, 897 F. Supp. 2d at 881 ("If the defendant merely operates a website, even a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."). Nor do they dispute that the Healthcare Defendants are all located outside of California. *See* Mot. to Dismiss at 6-7. Finally, it is beyond dispute that the Healthcare Defendants did not individually target California plaintiffs—indeed, none of the Plaintiffs are residents of California. Compl. ¶¶ 6-8.[3]

[3] The Healthcare Defendants also are not subject to jurisdiction in California based on Facebook's forum selection clause. *See* Opp. to Mot. to Dismiss at 13. Plaintiffs have not alleged that any Healthcare Defendant entered into a contract with Facebook. Even if they had, any forum-

**B. The Eleventh Amendment Bars Jurisdiction over MD Anderson.**

For the same reasons that the Court may not enter an injunction absent personal jurisdiction over the Healthcare Defendants, it also would be inappropriate for the Court to grant Plaintiffs' motion for injunctive relief before it adjudicates MD Anderson's Eleventh Amendment immunity defense. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (stressing importance of resolving immunity questions at the earliest possible stage in litigation because immunity is "an entitlement not to stand trial or face the other burdens of litigation") (internal citations omitted).

MD Anderson's immunity means that Plaintiffs cannot succeed on the merits of their claims against MD Anderson, even to the extent that they seek injunctive relief as a remedy. MD Anderson has Eleventh Amendment immunity from Plaintiffs' claims for the reasons explained in Defendants' Joint Motion to Dismiss. *See* Mot. to Dismiss at 15. Anderson's immunity applies both from Plaintiffs' substantive claims and their request for injunctive relief. *See Van Wickler v. City of Santa Cruz/Santa Cruz Police Dep't*, No. CV-04-01792-JF, 2004 WL 2218371, at *2 (N.D. Cal. Oct. 1, 2004) ("The Eleventh Amendment also bars claims in federal court against state official capacity defendants for violation of state law—whether for damages, injunction or declaratory relief—unless the state has waived immunity.") (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)). Plaintiffs' motion must be denied as to MD Anderson.

**C. The Court Lacks Subject Matter Jurisdiction.**

Plaintiffs' motion also fails for the additional reason that Plaintiffs have failed to establish standing and the Court lacks subject matter jurisdiction over the case as a whole.

To establish standing under Article III, a plaintiff must show that he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

---

selection clause is not relevant to claims by *Plaintiffs* against them. *See Concrete Washout Sys., Inc. v. Terrell Moran, Inc.*, No. 2:14-0830 WBS CKD, 2015 U.S. Dist. LEXIS 22936, at *7-8 (E.D. Cal. Feb. 25, 2015) (forum-selection clauses do "not apply … where a non-party to a contract [here, plaintiffs] bears no relation to the signatory [here, the healthcare defendants] at the time of the execution of the contract, because such a non-party could not have participated in the transaction") (distinguishing *Holland Am. Line, Inc. v. Wartsila N. Am. Inc.*, 485 F.3d 450, 456 (9th Cir. 2007)).

hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000). At the pleading stage, "the plaintiff must '*clearly* ... allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (emphasis added) (citation omitted). As Defendants have now argued on three different occasions (*see* Mot. to Dismiss at 9-15; Reply ISO Mot. to Dismiss at 2-8; Opp. to Admin. Mot. at 2-3), Plaintiffs have not alleged any concrete injury as a result of the alleged transmission of referer headers to Facebook. The instant motion fares no better.

In seeking a preliminary injunction, Plaintiffs have not submitted any evidence of pain, suffering, or economic loss resulting from the alleged disclosure of their browsing activity on Defendants' public websites to Facebook. Plaintiffs allege the mere disclosure of referrer headers to public websites. Even assuming this information were somehow personal to the Plaintiffs, "nothing in the precedent of the Ninth Circuit or other appellate courts confers standing … based on nothing more than the unauthorized disclosure of personal information."[4] *In re Google, Inc. Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 WL 6738343, at *5 (N.D. Cal. Dec. 28, 2012); *see also Foster v. Essex Prop., Inc.*, No. 5:14-CV-05531-EJD, 2017 WL 264390, at *1-3 (N.D. Cal. Jan. 20, 2017) (Davila, J.) (dismissing complaint for lack of standing where plaintiffs failed to show any harm resulting from alleged unauthorized disclosure, such as unauthorized credit card charges or exposure to a greater risk of identity theft and fraud); *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011); *In re iPhone Application*

[4] Plaintiffs have submitted two cases as supplemental authority: the Third Circuit's decision in *In re Horizon Healthcare Services Data Breach Litig.*, --- F.3d ----, 2017 U.S. App. LEXIS 1019 (3d Cir. Jan. 20, 2017), and the Ninth Circuit's decision in *Van Patten v. Vertical Fitness Group LLC*, --- F.3d ----, 2017 U.S. App. LEXIS 1591 (9th Cir. Jan. 30, 2017). *See* ECF Nos. 153, 154. In *Horizon*, the Third Circuit applied its own precedent and held that disclosure of personal information coupled with a violation of the Fair Credit Reporting Act that was uncontested on appeal constituted a concrete injury. *In re Horizon*, 2017 U.S. App. LEXIS 1019. at *23. In *Van Patten*, the Ninth Circuit likewise found concrete injury based on an alleged disturbance of solitude coupled with an alleged violation of the Telephone Consumer Protection Act. *Van Patten*, 2017 U.S. App. LEXIS 1591, at *12. Like the other cases Plaintiffs have cited on this point, however, both *Horizon* and *Van Patten* are easily distinguishable. *See* Reply ISO Mot. to Dismiss at 5 n.4. *Horizon* was a data breach case that involved the theft of laptop computers containing Social Security numbers and clinical information. *Van Patten* was a TCPA case that involved unsolicited telemarketing text messages. This case involves website browsing on publicly-available websites.

*Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256 GW JCGx, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011).

## II. PLAINTIFFS FAIL TO SHOW A LIKELIHOOD OF IRREPARABLE HARM.

Plaintiffs' inability to allege harm sufficient to confer standing dooms their instant motion for an additional reason: "At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to *irreparable* harm." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis added). In other words, a "plaintiff must do more than merely *allege* imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id.* (emphasis added). Mere "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.*; *see also Universal Semiconductor v. Tuoi Vo*, No. 16-cv-04778-EJD, 2016 U.S. Dist. LEXIS 164513, at *5 (N.D. Cal. Nov. 29, 2016) (the "irreparable harm presentation must be 'clear'") (citing *Garcia*, 786 F.3d at 746); *Am. Greener Techs. Inc. v. Enhanced Life Water Solutions, LLC*, No. CV-15-02491-PHX-JJT, 2016 U.S. Dist. LEXIS 52249, at *37 (D. Ariz. Mar. 23, 2016) ("Unlike in other cases where courts have found irreparable harm, such as [] environmental injuries … and the potential of death and physical pain …, Plaintiffs have not shown such significant injury or that their alleged injuries can only be protected through a preliminary injunction[.]").

"Irreparable harm" means what it says: the plaintiff will actually suffer harm that cannot be remedied by other corrective relief. If the harm is speculative or can be remedied by alternative means, the motion should be denied. *See, e.g.*, *CSNK Working Capital Fin. Corp. v. Baxter, Bailey & Assocs.*, No. 5:16-cv-04234-EJD, 2016 U.S. Dist. LEXIS 111011, at *6 (N.D. Cal. Aug. 19, 2016) (Davila, J.) (denying preliminary injunction where "other corrective relief will be available"); *Wo of Ideafarm v. Mountain View Police Dep't*, No. 5-16-cv-06270-EJD, 2016 U.S. Dist. LEXIS 151401, at *6 (N.D. Cal. Nov. 1, 2016) (Davila, J.) ("*possibility* of additional interference … is not the equivalent of 'immediate threatened injury'" (emphasis added)); *Brisette v. Arnold*¸ No. 2:16-cv-0208 GEB GGH P, 2016 U.S. Dist. LEXIS 56308, at *8 (E.D. Cal. Apr. 26, 2016) (failure to show irreparable harm where alternative means are availa-

ble, even if moving party may find fault with those alternatives); *cf. BoomerangIt, Inc v. ID Armor, Inc.*, No. 5:12-cv-0920 EJD, 2012 U.S. Dist. LEXIS 86382, at *11 (N.D. Cal. June 21, 2012) (Davila, J.) ("Harm is irreparable when it cannot be remedied except through injunctive relief.").

Substantial delay by plaintiffs in bringing a motion for preliminary injunctive relief is a strong indication that there is no real urgency or irreparable harm. *Garcia*, 786 F.3d at 746 ("Plaintiff's long delay [of five months] before seeking a preliminary injunction implies a lack of urgency and irreparable harm." (quoting *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F. 2d 1374, 1377 (9th Cir. 1985)); *see also Universal Semiconductor*, 2016 U.S. Dist. LEXIS 164513, at *7 (one-month delay weighed against finding of irreparable harm); *Williby v. Hearst Corp.*, No. 5:15-cv-02538-EJD, 2016 U.S. Dist. LEXIS 142795, at *6-7 (N.D. Cal. Oct. 14, 2016) (Davila, J.) (three-month delay weighed against finding of irreparable harm); *Hanginout, Inc. v. Google Inc.*, 54 F. Supp. 3d 1109, 1132 (S.D. Cal. 2014) (denying injunction, citing cases where delays of eight, seven, five, and three months weighed against finding of irreparable harm). Similarly, the fact that the defendant's conduct has been ongoing for several years is also an indication that a preliminary injunction is not appropriate. *See, e.g.*, *Oakland Tribune*, 762 F. 2d at 1377 ("Where no new harm is imminent, and where no compelling reason is apparent, the district court was not required to issue a preliminary injunction against a practice which has continued unchallenged for several years.").

Here, Plaintiffs fail to show irreparable harm for several reasons: <u>First</u>, Plaintiffs fail to show that the presence of Facebook code on the Healthcare Defendants' websites will result in any injury whatsoever, much less an immediate risk of irreparable injury. Indeed, Plaintiffs fail to cite any case in which a court has found that an injury remotely like the alleged injury here amounts to an immediate threatened injury—nor are Defendants aware of one. *See, e.g.*, *Low*, 2011 WL 5509848, at *1, *6 (plaintiff "failed to put forth a coherent theory of how his personal information was disclosed or transferred to third parties, and how it ha[d] harmed him"); *iPhone*, 2011 WL 4403963, at *1, *4 (plaintiffs "d[id] not identify what harm (if any) resulted from the access or tracking of their personal information"). <u>Second</u>, as in *Garcia*, Plaintiffs'

failure to make their motion for a preliminary injunction until seven months after they filed their complaint demonstrates that there is no genuine urgency to their motion. Third, practices like those that Plaintiffs challenge here—the routine transmission of web browsing information to third party website content providers—are widespread and longstanding. In fact, the very functionality that Plaintiffs attack as likely to cause them irreparable harm has been upheld by this Court in a case filed by the same plaintiffs' counsel and involving materially identical claims. *See Facebook Internet*, 140 F. Supp. 3d at 932. Lastly, Plaintiffs do not allege any facts from which the Court may infer that the alleged disclosures are likely to continue. Plaintiffs are free not to visit the Healthcare Defendants' websites and are free to adopt various self-help measures *(see* Rubin Decl. ¶ 7). Either of these solutions would prevent Plaintiffs' web browsers from transmitting browser information to Facebook. With these alternative means available, Plaintiffs' assertion of "irreparable harm" rings hollow.

Because Plaintiffs fail to show irreparable harm, their motion should be denied on this basis alone. *See Universal Semiconductor*, 2016 U.S. Dist. LEXIS 164513, at *8 (where the moving party fails to make a clear showing of irreparable injury, "the court need not address the other factors required to obtain injunctive relief").

**III. PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THEIR CLAIMS.**

Plaintiffs' burden to prove a likelihood of succeeding on the merits is "doubly demanding:" they must "establish that the law and facts *clearly favor*" their position, "not simply that [they are] likely to succeed." *Garcia*, 786 F.3d at 740 (emphasis in original). Because injunctions are "extraordinary remed[ies] never awarded as of right," it is well established that injunctions should not issue in "doubtful cases." *Winter*, 555 U.S. at 24; *Am. Freedom Def. Initiative v. King Cty.*, 796 F.3d 1165, 1173 (9th Cir. 2015), *cert denied*, 136 S. Ct. 1022 (2016).

Plaintiffs argue that their claims are likely to succeed because "the nature of the data disclosed is PII" and "Plaintiffs' lack … consent to the conduct at issue." Pltfs.' Mot. for Injunctive Relief at 8. On these points in particular, Plaintiffs' improper attempt at a surreply is especially evident as these arguments have already been extensively briefed by the parties. *See* ECF Nos. 96, 109, 143, 152; *see also Carr v. Allied Waste Sys.*, No. C 10-0715 PJH, 2011 U.S.

Dist. LEXIS 101658, at *18 (N.D. Cal. Sept. 8, 2011) (rejecting motion to submit additional information filed after briefing on motion to dismiss as an improper attempt at a surreply); *Rathbun v. IndyMac Mortg. Servs.*, 916 F. Supp. 2d 1174, 1181 & n.3 (D. Mont. 2013) (rejecting motion that was a "thinly disguised surreply on matters already briefed"). Even excusing this improper attempt to bypass local rules, Plaintiffs fail to show a likelihood of succeeding on the merits of their claims for at least four independent reasons: (1) they fail to assert any real evidence to support their conclusory allegations; (2) the communications in question do not involve protected medical information; (3) Plaintiffs' own allegations establish they consented to the conduct at issue; and (4) Plaintiffs' Complaint does not clearly state any legally-cognizable claim against the Healthcare Defendants.

**A. Plaintiffs' Motion is Based on Inadmissible and Unhelpful Evidence.**

**1. Plaintiffs' Purported Expert Concedes They Have No Claim.**

Right out of the gate, Plaintiffs stumble in attempting to "establish that the law and facts *clearly favor*" their position (*Garcia*, 786 F.3d at 740) because they base their position on the declaration of a purported expert, Timothy Libert, who has conceded that Plaintiffs have no cause of action in these circumstances. Regardless of what might be stated in the declaration submitted by Plaintiffs' purported expert in this action, Mr. Libert has elsewhere admitted that "current U.S. law does little to forbid, control or punish this type of data collection. <u>It is perfectly legal to monitor what health websites an individual is visiting</u> and sell that information to anybody who is willing to pay." Rubin Decl. ¶ 7 (emphasis added). Similarly, Mr. Libert instructs that "[i]n the US, the Health Insurance Portability and Accountability Act regulates health information derived from clinical setting, but <u>no regulations constrain the use of information from web browsing</u>." *Id.*, Ex. 2 (emphasis added). In Mr. Libert's opinion, "HIPAA was made long before the Web was really in everybody's home …. Anything that is happening on the Web today is pretty much completely unregulated." *Id.*, Ex. 3.

These, of course, are the same things that the defendants have been saying all along. Mot. to Dismiss at 28-29; Reply ISO Mot. to Dismiss at 10-11. In light of these admissions by Plain-

tiffs' expert, Plaintiffs cannot "establish that the law and facts *clearly favor*" their position and their motion should therefore be denied.

**2. Plaintiffs' Purported Expert Declaration Is Inadmissible.**

Mr. Libert's purported expert declaration also is inadmissible under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Daubert* and Rule 702 broadly require that the trial court "perform a gatekeeping function to ensure that the expert's proffered testimony is both reliable and relevant." *United States v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010). To determine reliability, courts examine: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (citing *Daubert*, 509 U.S. at 592-94). Mr. Libert's declaration is inadmissible for several reasons:

First, Mr. Libert's testimony is based entirely upon unverified and untested software that Mr. Libert developed himself—a fact that he fails to disclose—and for which he provides no indicia of reliability. Specifically, Mr. Libert states that he "used the webXray software" to evaluate the Internet communications at issue, Libert Decl. ¶ 26, but fails to reveal that he is the one who "developed, distributed, and host[s]" this software. *See* Rubin Decl., Exs. 4, 5. Likewise, he claims to have "follow[ed] the instructions" for webXray, but fails to reveal that he wrote those instructions himself. Libert Decl., ¶ 26. Through these omissions, Mr. Libert misleadingly implies that the source of his findings has achieved some level of acceptance and use beyond its developer, when in fact he may very well be the only individual who has ever used it. Mr. Libert bases his methodology on the use of his webXray software, but he provides no proof that his software is reliable or generally accepted by Internet forensic experts. Indeed, Mr. Libert does not even provide an explanation of how his webXray software works. This total failure to show that his methodology is accepted or reliable means that Mr. Libert's opinions should be excluded. *See Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) (affirming exclusion of

expert testimony where expert did not show "that he followed a scientific method embraced by at least some other experts in the field").

Second, Mr. Libert's opinion was prepared after the filing of this action, prepared solely for purposes of litigation, and fails to cite to any objective third-party sources. This is evidenced by the fact that his declaration is largely a carbon-copy of the Complaint. *See e.g.*, Libert Decl. ¶¶ 17-18 *vs.* Compl. ¶¶ 27-28; Libert Decl. ¶¶ 11, 13 *vs.* Compl. ¶ 25; Libert Decl. ¶ 4 *vs.* Compl. ¶ 22; Libert Decl. ¶ 8 *vs.* Compl. ¶ 30. If an expert's "testimony is not based on 'pre-litigation' research …, then the expert must explain precisely how he went about reaching his conclusions and point to some objective source … the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that he has followed the scientific method." *Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, 55. F. Supp. 2d 1024, 1030 (N.D. Cal. 1999). Mr. Libert does none of this to justify his conclusions—his testimony is supported solely by his *ipse dixit*. This is improper. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).[5]

Third, Mr. Libert bases his findings on his own legal conclusions, which are an inappropriate matter for expert testimony. *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (testimony concerning the reasonableness of defendant's belief was a legal conclusion inappropriate for expert testimony). It is "well-established that 'an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Lukov v. Schindler Elevator Corp.*, No. 5:11-cv-00201 EJD, 2012 U.S. Dist. LEXIS 88415, at *4 (N.D. Cal. June 26, 2012) (Davila, J.) (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)). But that is exactly what Mr. Libert does. Under the guise of an expert opinion, Mr. Libert declares, without explanation or analysis, that the browsing information Facebook has collected is "sensitive medical content" subject to HIPAA. Libert Decl. ¶¶ 37, 43, 49-50. These statements constitute legal conclusions, properly within the purview of the Court and not an ex-

[5] Because Mr. Libert does not provide proper information pertaining to the reliability of the reports in Exhibit A, nor to the reliability of Mr. Libert's methodology as a whole, Exhibit A should be excluded for lack of proper foundation. *See* Fed. R. Evid. 901.

pert witness—especially a witness who has offered directly contradictory opinions in contexts outside this litigation. *See, e.g.*, Rubin Decl. ¶ 7. And without these legal conclusions, Mr. Libert's testimony simply does not support Plaintiff's claims of liability.

Plaintiffs bear the burden of showing that Mr. Libert's testimony passes muster, and they have failed to do so.[6] *Carnegie Mellon Univ.*, 55 F. Supp. 2d at 1030 ("The proponent of the [expert] evidence must prove its admissibility by a preponderance of proof.").

**B. Plaintiffs' Claims Fail Because They Do Not Involve Protected or Sensitive Information.**

Plaintiffs' request for an injunction should be denied because it is based on nothing more than the alleged disclosure of browsing information with the Healthcare Defendants' public websites. These communications do not constitute protected health information covered by HIPAA. Mot. to Dismiss at 28-32; Reply ISO Mot. to Dismiss at 9-13. Nothing Plaintiffs introduce suggests otherwise.

The only HIPAA regulation that Plaintiffs cite in support of their claim that the referrer headers at issue constitute protected health information, 45 C.F.R. § 164.514(b)(2)(i), merely specifies requirements for the de-identification of information that is covered by the statute.[7] It does not define what protected health information is in the first place. Rather, "protected health information" is defined by 45 C.F.R. § 160.103, which makes clear that HIPAA has no application whatsoever to the referer headers in question.

[6] Mr. Libert also fails to show that he is qualified by knowledge, skill, or experience. Fed. R. Evid. 702. Mr. Libert omits pertinent information that bears on his qualifications: the field in which he is pursuing his doctorate degree, the stage of completion of his degree, and any information pertaining to his undergraduate or any other relevant degrees. While Mr. Libert purports to be an expert on Facebook code and the passive transmission of "medically sensitive information" to Facebook, he fails to explain how his experience qualifies him to opine with respect to these issues. *See, e.g.*, *523 IP LLC v. CureMD.com*, 48 F. Supp. 3d 600, 647 (S.D.N.Y. 2014) (striking expert declaration where proposed expert failed to "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts") (citations omitted).

[7] As noted, Plaintiffs' purported expert's stated understanding of this regulation, Libert Decl. ¶ 50, deserves no weight. Experts may not purport to opine on legal conclusions. *See supra* 15. Not only that, Mr. Libert is talking out of both sides of his mouth: when not proffering opinions in Plaintiffs' employ, he has expressed the *exact opposite* opinion, stating that HIPAA has no application to web browsing communications. *See supra* 13 (citing Rubin Decl. ¶ 7 & Exs. 2-3).

First, "individually identifiable health information" refers solely to information that is both "created or received by a [covered entity]" and "relate[d] to the past, present, or future physical or mental health condition of an individual; … or the past, present, or future payment for the provision of health care to an individual." *Id.* The declarations Plaintiffs submit do not claim, and no other evidence shows, that the referer headers in question were "created or received" by covered entities or that the referrer headers related to their past, present or future health condition, or payment for the provision of healthcare. Nor could they: the websites in question are publicly-available and have nothing to do with medical diagnoses or payment for health care services by individual patients.

Second, HIPAA is limited to "financial and administrative transactions" of "covered entities." 42 U.S.C. § 1320d-2(a)(2). As the Department of Health and Human Services stated in first proposing the Rule: "This rule proposes standards to protect the privacy of individually identifiable health information *maintained or transmitted in connection with certain administrative and financial transactions*." 64 Fed. Reg. 59,918, 59,918 (Nov. 3, 1999) (emphasis added). The term "financial and administrative transactions" is a term defined by statute. Nowhere in the statute or regulations is the act of visiting a public website swept into the scope of HIPAA.

Third, HIPAA applies solely to "covered entities." Section 160.103 defines that term as a health plan, a health care clearinghouse, or a health care provider. *Id.* Plaintiffs concede that defendants ACS, ASCO, and MRF are not covered by HIPAA. Compl. ¶ 214; *see also* 45 C.F.R. § 160.103. HIPAA therefore cannot apply to them.

For all these reasons, it is no surprise that Plaintiffs' own expert agrees that the communications at issue here are not regulated by HIPAA or any other law. According to Mr. Libert, "[i]t is perfectly legal to monitor what health websites an individual is visiting and sell that information to anybody who is willing to pay." Rubin Decl. ¶ 7.

### C. Plaintiffs' Claims Fail Because Plaintiffs Consented to the Conduct at Issue.

Plaintiffs' request for an injunction also should be denied because Plaintiffs admit that they agreed to policies that disclosed the complained-of behavior. *See* Compl. ¶ 59. As already discussed in detail in Defendants' previous briefing, both Facebook's policies and the Healthcare

Defendants' clearly disclosed that browser communications with public websites (such as the Healthcare Defendants') may be disclosed to third parties (such as Facebook) who provide content to those websites. *See* Mot. to Dismiss at 16-18; Reply ISO Mot. to Dismiss at 13-15.

Plaintiffs' Complaint acknowledges that "[o]n sign-up, Facebook requires users to click a green Sign Up button" directly underneath the following text: "By clicking Sign Up, you agree to our Terms and that you have read our Data Policy, including our Cookie Use." Compl. ¶ 58. Facebook's policies clearly cover the activity on which Plaintiffs' base their claims. Those policies disclosed that Facebook:

> (1) "work[s] with third-party companies who . . . use advertising or related products"; (2) "collect[s] information when you visit or use third-party websites," including "information about the websites"; (3) "use[s] all of the information we have about you to show you relevant ads"; (4) "provide[s] [third parties] with information about the reach and effectiveness of their advertising"; (5) uses "[c]ookies" to "deliver ads," "make them more relevant to you," and "show you . . . ad[s] based on the websites you visit or the apps you use—all across the Internet and mobile ecosystem"; and (6) permits people to "control" these processes or opt out of targeted advertising.

Mot. to Dismiss at 16-17.

Similarly, the Complaint alleges that the Healthcare Defendants had policies in place at the time of the Plaintiffs' visits to their websites, several of which made substantially the same disclosures regarding sharing information pertaining to Plaintiffs' browsing activities and none of which made promises to the contrary. *See* Compl. ¶¶ 111, 127, 142, 156, 171, 184, 195; *see also id.* Exs. F-L. The Healthcare Defendants' policies explained that third parties would use cookies to collect information about users' browsing on their sites. *See id.*; *see, e.g.*, Compl. Ex. G § 4 ("the providers of third party Cookies may have the ability to link your activities on the Website with your browsing activities elsewhere on the Internet."). The policies also specifically directed users to consult the privacy policies of third-party sites for information about data collection. *See, e.g.*, Compl. Ex. F at 5 ("read the privacy policies of each site you visit to determine what information that site may be collecting about you"); *id.* Ex. I at 4 ("review the privacy policies of other sites carefully before providing any information to such website"). Plaintiffs do not

and, in light of their express allegations, cannot dispute that they agreed to these policies; their claimed expectations of privacy therefore deserve little—if any—weight.[8]

**D. Plaintiffs' Claims Fail on Their Individual Elements.**

In arguing their likelihood of succeeding on the merits of their claims, Plaintiffs effectively repeat the same arguments already set forth in their opposition to Defendants' motion to dismiss. *See* Opp. to Mot. to Dismiss at 14-33. And for the numerous reasons already discussed in Defendants' briefing in this case, *see* ECF Nos. 96, 109 (briefing on motion to dismiss); ECF Nos. 143, 152 (briefing on healthcare defendants' motion to stay); ECF Nos. 144, 151 (briefing on Facebook's motion to stay), Plaintiffs fail even to state a claim, much less to show a *likelihood* of meeting their evidentiary burden. At the very least, Plaintiffs are not "clearly" likely to prevail. This is so for several overarching reasons.

First, Plaintiffs continue to acknowledge that the Healthcare Defendants were "part[ies] to the communications" at issue. *See, e.g.* Pltfs.' Mot. for Injunctive Relief at 14-15. On this basis alone, their federal and California wiretap claims fail. *See* 18 U.S.C. § 2511(2)(d); Cal. Penal Code § 631(a); *In re Google Cookie Inc. Placement Consumer Privacy Litig.*, 806 F.3d 125, 145, 152 (3d Cir. 2015), *cert denied*, 137 S. Ct. 36 (2016). Plaintiffs effectively concede as much, as they devote the vast majority of these sections of their brief to arguing, bizarrely, that "*Facebook* Completed an 'Interception'"; "*Facebook* Acquires 'Content'"; "*Facebook* did not have the consent of the Plaintiffs." *See* Pltfs.' Mot. for Injunctive Relief at 12-13, 17 (emphases added). While Plaintiffs halfheartedly contend that the Healthcare Defendants may still be held liable as parties under on the tortious-purpose exception to federal Wiretap Act, Pltfs.' Mot. for

[8] Plaintiffs' attempt to compare this case to *Griswold* and *Norman-Bloodsaw* is inapposite and disingenuous: the U.S. Supreme Court, in *Griswold*, and the Ninth Circuit, in *Norman-Bloodsaw*, dealt directly with the personal health and bodily integrity of individuals and examined privacy interests with regards to one's own health. *See Griswold v. Conn*. 381 U.S. 479 (1965) (overturning state ban on use of contraceptives as violation of right to marital privacy); *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260 (9th Cir. 1998) (upholding the right of an employee to be free from non-consensual extraction and testing of genetic material in a pre-employment medical examination). In contrast, the disclosure of referer headers to Facebook cannot conceivably affect the medical condition or bodily integrity of any plaintiff. And, as previously stated, Plaintiffs do not allege that the referer headers at issue here even reflect information pertaining to their own health.

Injunctive Relief at 11, 16, there is "no legal authority providing that [this provision] is triggered when … the tortious conduct is the alleged wiretapping itself." *Google Cookie Placement*, 806 F.3d at 145. Indeed, the Ninth Circuit has expressly rejected this argument. *See Sussman v. Am. Broad Cos.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) ("Under section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended *use*—was criminal or tortious.'" (emphasis added) (citation omitted); *see also Caro v. Weintraub*, 618 F.3d 94, 98, 100 (2d Cir. 2010). Plaintiffs allege that Facebook received the referrer headers at issue "for purposes of direct marketing" (Compl. ¶ 2), not with any tortious or criminal design.

Second, Plaintiffs' claims merely repackage those which this Court has already dismissed (with leave to replead) in *Facebook Internet*, 140 F. Supp. 3d at 932. Third, Plaintiffs expressly disavow any allegation of intentional conduct by the Healthcare Defendants (Compl. ¶¶ 290, 317), despite alleging multiple causes of action that unquestionably require Plaintiffs to prove intent. *See* Compl. ¶¶ 249-331 (Wiretap Act; Intrusion Upon Seclusion; California Invasion of Privacy Act; California Constitutional Invasion of Privacy). Fourth, Plaintiffs have not cited any statute, regulation, or other authority that gives rise to a legal duty to protect Plaintiffs' web browsing communications as private—nor are Defendants aware of any. *See, e.g.*, Rubin Decl., Ex. 3. On this basis, Plaintiffs' remaining causes of action against the Healthcare Defendants also cannot survive. *See* Compl. ¶¶ 332-347 (Negligence Per Se; Negligent Disclosure of Confidential Information; Breach of Fiduciary Duty of Confidentiality). Finally, as discussed above, Plaintiffs consented to the conduct at issue.

For all of these reasons, Plaintiffs have not and cannot establish that they are likely to prevail on the merits of their claims. Their motion must be denied on this basis alone.

## IV. THE BALANCE OF EQUITIES DISFAVORS INJUNCTIVE RELIEF.

In addition to the requirements stated above, "Plaintiffs must demonstrate that the balance of the equities tips in their favor." *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014), *aff'd*, 779 F.3d 991 (9th Cir. 2015). The issue on this factor is "the relative effect of granting or denying an injunction on the parties." *Cave Consulting Grp., LLC v. Op-*

*tumInsight, Inc.*, No. 5:11-cv-00469 EJD, 2016 U.S. Dist. LEXIS 120932, at *70 (N.D. Cal. Sept. 7, 2016) (Davila, J.) (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010)).

As discussed above, Plaintiffs have waited too long to credibly argue that they face any potential harm if injunctive relief is denied. Moreover, they do not state that they intend to use the seven Healthcare Defendants' websites at any time in the future, or even that they would like to do so but have been deterred by the potential disclosure of their information to Facebook or any other third party. Instead, they claim the alleged disclosure of their communications has "already caused irreparable injury in that my sensitive medical communications were disclosed and tracked[.]" *See, e.g.*, ECF No. 112 (Smith Decl.) ¶ 5. But "[i]njunctive relief is forward looking only," *Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181, 1196 (C.D. Cal. 2007) (citing *Lidie v. State of Cal.*, 478 F.2d 552, 556 (9th Cir. 1973)), and there is no harm to Plaintiffs on this basis if injunctive relief is denied—the alleged injury has already occurred.

In their declarations, Plaintiffs do identify one purported future harm: the alleged "continued unauthorized disclosure of, review, and use of the information above creates additional harm and puts other persons in my situation at risk of irreparable harm." *See, e.g.*, Smith Decl. ¶ 7. That bare, speculative assertion does not come close to justifying the extraordinary remedy of an injunction. This is especially so because Plaintiffs point to purported harms occurring after the Healthcare Defendants' alleged disclosures, over which the Healthcare Defendants lack any control. Moreover, with respect to the "other persons," it is settled law that plaintiffs do not have standing to seek injunctive relief on behalf of others who are not before the Court when they themselves are not entitled to this relief. *See, e.g.*, *Backhaut v. Apple Inc.*, No. 14-CV-02285-LHK, 2015 U.S. Dist. LEXIS 107519, at *23 (N.D. Cal. Aug. 13, 2015) ("[A] named plaintiff must show that he or she is subject to a likelihood of future injury. Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class.") (citing *Hodgers-Durgin v. De La Vin*a, 199 F.3d 1037, 1045 (9th Cir. 1999)); *see also, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (denying standing to assert a claim for injunctive relief where "[n]either the complaint nor

respondents' counsel suggested that any of the named plaintiffs at the time the complaint was filed were themselves serving an allegedly illegal sentence").

Thus, Plaintiffs have shown no harm to them if their motion is denied. On the other hand, issuing an injunction will harm all of the non-profit Healthcare Defendants, as they will each be under a judicial order "to remove all source code from all of their websites that results in the disclosure of information to Facebook," or "to maintain the status quo." Pltfs.' Mot. for Injunctive Relief at 1-2. For some, this will require redesigning their websites to prevent such disclosure. And for all of the Healthcare Defendants, this will require constant monitoring to ensure they are compliant with the Court's order. *See supra* 2 n. 1. On this basis, the balance of the equities tips heavily in favor of the Healthcare Defendants. Plaintiffs' requested relief should be denied for this reason as well.

## V. THE PUBLIC INTEREST DISFAVORS INJUNCTIVE RELIEF.

Finally, Plaintiffs also fail to show the public interest favors their requested injunctive relief. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)); *see also, e.g. Stormans, Inc. v. Selecky*, 586 F.3 1109, 1139 (9th Cir. 2009) ("If … the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction.").

Here, Plaintiffs' requested injunction will have a substantial impact on non-parties not before the Court, and thus the public interest should be considered. For example, the Healthcare Defendants' websites provide information to many people other than the Plaintiffs. An injunction would limit those people from being able to freely "Like" and share content on the Healthcare Defendants' websites, restricting the flow of helpful and valuable information online.

Notwithstanding their extraordinary burden, Plaintiffs fail to establish how the public interest might be served by the issuance of their proposed injunction. Instead, they hide behind general statements about the "[w]idespread recognition of privacy as a fundamental right."

Pltfs.' Mot. for Injunctive Relief at 22. The Healthcare Defendants do not dispute the existence of a fundamental right to privacy. But Plaintiffs fail to tie this abstract assertion to any behavior by the Healthcare Defendants.[9] Moreover, on this point again, Plaintiffs target behavior by Facebook, not the Healthcare Defendants. *See, e.g.*, *id.* at 23 ("Facebook is creating a turn-key solution for totalitarianism").

As Plaintiffs' expert further acknowledges, there is a simple solution available to those persons who do not want their website-surfing tracked by Facebook or any other company: simply download Ghostery or Ad Block Plus. *See* Rubin Decl. ¶ 7 (Plaintiffs' expert identifying two Internet browser extensions that can detect and block third party advertising services). Rather than employ this simple solution, however, Plaintiffs have asked this Court to impose the extraordinary remedy of a preliminary injunction on entities outside this Court's jurisdiction. As discussed *supra* 10-12, courts have continually held that when an alleged problem can be fixed by means other than an injunction, the extraordinary remedy should not be imposed. *See, e.g.*, *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1141 (C.D. Cal. 2009) (denying motion for preliminary injunction where such measure was "not necessary to rectify" the problem); *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971) (overturning broad injunction where injunction was not necessary to redress an alleged "private wrong"); *Bayline Partners L.P. v. Weyerhaeuser Co.*, No. C-93-2828-VRW, 1994 U.S. Dist. LEXIS 19638, at *16 (N.D. Cal. Feb. 17, 1994) (denying motion for preliminary injunction where the injunction was "not necessary to remedy" the harm); *Miller v. LCF, Inc.*, No. C-94-3372-VRW, 1994 U.S. Dist. LEXIS 17239, at *24 (N.D. Cal. Nov. 18, 1994) (denying motion for injunction where the proposed injunction would "accomplish little, if anything").

For these reasons, plaintiffs' proposed injunction is not in the public interest and their motion should be denied for this reason as well.

[9] While Plaintiffs also rely on the Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473, 2490 (2014), to support their proposed injunction, that case is inapposite—it decided the question of whether the government must secure a warrant under the Fourth Amendment before searching a suspect's cell phone for incriminating evidence. *Id.* at 2480. There are no crimes at issue here, simply the potential placement of ads on a Facebook member's Internet browser.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.[10]

[10] Plaintiffs seek attorneys' fees and costs incurred in bringing this motion under 18 U.S.C. § 2520(b). *See* Pltfs.' Mot. for Injunctive Relief at 2. This request is particularly ill-advised. If anything, Defendants are entitled to costs incurred in defending against this totally unsupported request for injunctive relief. Indeed, Plaintiffs' expert did not even begin his purported investigation of the Healthcare Defendants' websites until Defendants had already filed their motion to dismiss this action. *Compare* Libert Decl. ¶ 26 (noting that website scans began on July 12, 2016), *with* Mot. to Dismiss (filed June 30, 2016). In addition to the many hundreds of attorney hours already devoted to defending against Plaintiffs' allegations, the Defendants have now devoted even more time to defending against this baseless motion.

Dated: February 13, 2017

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Michael H. Rubin*
MICHAEL H. RUBIN, State Bar No. 214636
mrubin@wsgr.com
LAUREN GALLO WHITE, State Bar No. 309075
lwhite@wsgr.com
PETER C. HOLM, State Bar No. 299233
pholm@wsgr.com
1 Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

ANTHONY J WEIBELL, State Bar No. 238850
aweibell@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

*Attorneys for Defendant*
*BJC HEALTHCARE*

JONES DAY

By: */s/ Jeffrey Rabkin*
JEFFREY RABKIN, State Bar No. 189798
jrabkin@jonesday.com
BRANDY H. RANJAN*
branjan@jonesday.com
ALEXANDRA A. MCDONALD, State Bar No. 300950
amcdonald@jonesday.com
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 875-5850
Facsimile: (415) 875-5700

* *Admitted pro hac vice*

BRIAN G. SELDEN, State Bar No. 261828
bgselden@jonesday.com
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
*Attorneys for Defendant*
*AMERICAN SOCIETY OF CLINICAL ONCOLOGY, INC.*

HOLLAND & KNIGHT LLP

By: /s/Shelley G. Hurwitz
SHELLEY G. HURWITZ, State Bar No. 217566
400 S. Hope St., 8th Floor
Los Angeles, CA 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450

JOHN P. KERN, State Bar No. 206001
DAVID I. HOLTZMAN, State Bar No. 299287
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 743-6900
Facsimile: (415) 743-6910

STEVEN B. ROOSA*
31 West 52 Street
New York, NY 10019
Telephone: (212) 513-3544
Facsimile: (212) 513-3544

*Attorneys for Defendants*
*ADVENTIST HEALTH SYSTEM SUNBELT HEALTHCARE CORPORATION (SUED AS "ADVENTIST HEALTH SYSTEM");*
*AMERICAN CANCER SOCIETY, INC.; AND*
*MELANOMA RESEARCH FOUNDATION*

**Pro hac vice application to be filed*

BAKER & HOSTETLER LLP

By: /s/ Teresa Chow
TERESA CHOW, State Bar No. 237694
tchow@bakerlaw.com
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: (310) 820-8800
Facsimile: (310) 820-8859

STEVEN M. DETTELBACH*
sdettelbach@bakerlaw.com
DANIEL R. WARREN*
dwarren@bakerlaw.com
DAVID A. CARNEY*
dcarney@bakerlaw.com
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
* *Pro hac vice application to be filed*

*Attorneys for Defendant*
*CLEVELAND CLINIC*

BAKER & HOSTETLER LLP

By: */s/ Teresa Chow*
TERESA CHOW, State Bar No. 237694
tchow@bakerlaw.com
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: (310) 820-8800
Facsimile: (310) 820-8859

PAUL G. KARLSGODT*
pkarlsgodt@bakerlaw.com
CASIE COLLIGNON*
ccollignon@bakerlaw.com
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone: (303) 861-0600
Facsimile: (303) 861-7805

* *Admitted pro hac vice*

*Attorneys for Defendant*
*UNIVERSITY OF TEXAS—MD ANDERSON CANCER CENTER*

**ATTESTATION**

I, Michael Rubin, hereby attest, pursuant to N.D. Cal. Local Rule 5-1(i)(3), that concurrence to the filing of this document has been obtained from each signatory.

By: */s/ Michael Rubin*
Michael Rubin