Paul R. Kiesel, State Bar No. 119854
*kiesel@kiesel.law*
Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
Nicole Ramirez, State Bar No. 279017
*ramirez@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel.: 310-854-4444
Fax: 310-854-0812

Barry R. Eichen [Admitted *Pro Hac Vice*]
*beichen@njadvocates.com*
Evan J. Rosenberg [Admitted *Pro Hac Vice*]
*erosenberg@njadvocates.com*
Ashley A. Smith [Admitted *Pro Hac Vice*]
*asmith@njadvocates.com*
**EICHEN CRUTCHLOW ZASLOW & McELROY**
40 Ethel Road
Edison, NJ 08817
Tel.: 732-777-0100
Fax: 732-248-8273

Stephen M. Gorny [Admitted *Pro Hac Vice*]
*steve@gornylawfirm.com*
Chris Dandurand [Admitted *Pro Hac Vice*]
*chris@gornylawfirm.com*
**THE GORNY LAW FIRM, LC**
2 Emanuel Cleaver II Boulevard, Suite 410
Kansas City, MO 64112
Tel.: 816-756-5056
Fax: 816-756-5067

Jay Barnes [Admitted *Pro Hac Vice*]
*jaybarnes5@zoho.com*
Rod Chapel [Admitted *Pro Hac Vice*]
*rod.chapel@gmail.com*
**BARNES & ASSOCIATES**
219 East Dunklin Street, Suite A
Jefferson City, MO 65101
Tel.: 573-634-8884
Fax: 573-635-6291

*Attorneys for Plaintiffs*

*(Additional Attorneys Listed on Signature Page)*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

WINSTON SMITH; JANE DOE I; and JANE DOE II, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FACEBOOK, INC.; AMERICAN CANCER SOCIETY, INC.; AMERICAN SOCIETY OF CLINICAL ONCOLOGY, INC.; MELANOMA RESEARCH FOUNDATION; ADVENTIST HEALTH SYSTEM; BJC HEALTHCARE; CLEVELAND CLINIC; and UNIVERSITY OF TEXAS - MD ANDERSON CANCER CENTER,

Defendants.

CASE NO. 5:16-cv-01282-EJD

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF**

Date: April 13, 2017
Time: 9:00 a.m.
Dept.: 4, 5th Floor
Before: Hon. Edward J. Davila

# TABLE OF CONTENTS


I. INTRODUCTION .... 1

II. LEGAL ARGUMENT .... 2

A. The Court Has General, Specific, and Consent Jurisdiction over Defendants .... 2

1. General Jurisdiction .... 2

2. Specific and Consent Jurisdiction .... 3

B. This Court Has Jurisdiction over MD Anderson .... 4

C. Plaintiffs Have Standing to Pursue their Privacy Claims .... 4

D. Plaintiffs Suffered and Continue to Suffer Irreparable Harm .... 6

E. Delay Alone Does Not Defeat a Claim for Injunctive Relief .... 7

F. Libert's Declaration Is Admissible and Uncontroverted .... 8

G. Plaintiffs' Claims Involve Protected and Sensitive Information and Defendants Admit that they Have a Duty to Keep that Information Private .... 11

H. Plaintiffs did not Consent .... 12

I. Plaintiffs Adequately Allege Wiretap Claims .... 13

J. Defendants Post-Filing Conduct Is Intentional; Discovery Will Show Whether Pre-Filing Conduct Was as Well .... 13

K. The Balance of Equities Favors Injunctive Relief .... 14

L. The Public Interest Favors Injunctive Relief .... 14

III. CONCLUSION .... 15

## TABLE OF AUTHORITIES

**FEDERAL CASES**


*Council of Ins. Agents & Brokers v. Molasky-Arman*
522 F.3d 925, 932 (9th Cir. 2008) ........ 5

*Daimler AG v. Bauman*
134 S. Ct. 746, 754 (2014) ........ 2

*Deerfield Med. Ctr. v. Deerfield Beach*
661 F.2d 328, 338 (5th Cir. 1981) ........ 6

*Doe 1 v. AOL, LLC*
719 F. Supp. 2d 1102, 1109 (N.D. Cal. 201 ........ 6

*Doe v. Chao*
540 U.S. 614, 621 (2004) ........ 5

*Foster v. Essex Prop.*
*Inc.*, No. 5:14-cv-05531-EJD, 2017 U.S. Dist. LEXIS 8373 (N.D. Cal. Jan. 20, 2017) ........ 5

*Franchise Tax Bd. of Cal. v. Hyatt*
136 S. Ct. 1277 ........ 4

*Garcia v. Google, Inc.*
786 F.3d 733, 744-46 (9th Cir. 2015) ........ 8

*Gilder v. PGA Tour, Inc.*
936 F.2d 417, 423 (9th Cir. 1991) ........ 7

*Hanginout, Inc. v. Google, Inc.*
54 F. Supp. 3d 1109, 1131-33 (S.D. Cal. 2014) ........ 8

*Hawaii Psychiatric Soc., Dist. Branch v. Ariyoshi*
481 F. Supp. 1028, 1052 (Ha. 1979) ........ 7

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*
485 F.3d 450, 456 (9th Cir. 2007) ........ 4

*Horizon Healthcare Servs. Data Breach Litig.*
No. 2-13-cv-07418, 2017 U.S. App. LEXIS 1019 (3d Cir. Jan. 20, 2017) ........ 5

*In re Google Privacy Policy Litig.*
No. C 12-01382 PSG, 2012 U.S. Dist. LEXIS 183041 (N.D. Cal. Dec. 28, 2012) ........ 5

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040, 1055 (N.D. Cal. 2012) ........ 5

*LaCourt v. Specific Media, Inc.*
No. SACV 10-1256-GW(JCGx), 2011 U.S. Dist. LEXIS 50543 (C.D. Cal. Apr. 28, 2011) ........ 5

*Low v. LinkedIn Corp.*
900 F. Supp. 2d 1010, 1021 (N.D. Cal. 2012) .......... 5

*Lydo Enters., Inc. v. City of Las Vegas*
745 F.2d 1211, 1213-14 (9th Cir. 1984) .......... 7

*Manetti-Farrow, Inc. v. Gucci American, Inc.*
858 F.2d 509, 514 n.5 (9th Cir. 1988) .......... 4

*Meyer v. Portfolio Recovery Assocs., LLC*
696 F.3d 943 (9th Cir. 2012) .......... 7

*Monterey Mech. Co. v. Wilson*
125 F.3d 702, 715 (9th Cir. 1997) .......... 7

*Nat'l Equip. Rental, Ltd. v. Szukhent*
375 U.S. 311, 316 (1964) .......... 3

*Nelson v. NASA*
530 F.3d 865, 879 (9th Cir. 2008) .......... 7

*Nevada v. Hall*
440 U.S. 410 (1979) .......... 4

*Nickelodeon Consumer Privacy Litig.*
827 F.3d 262, 272-74 (3d Cir. 2016) .......... 6

*Norman-Bloodsaw v. Lawrence Berkeley Lab.*
135 F.3d 1260, 1270 (9th Cir. 1998) .......... 7

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
762 F.2d 1374, 1376-78 (9th Cir. 1985) .......... 8

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*
213 F. Supp. 2d 1146, 1154 (C.D. Cal. 2002) .......... 10

*Perkins v. LinkedIn Corp.*
53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014) .......... 12

*Roback v. VIP Transport, Inc.*
90 F.3d 1207, 1215-16 (7th Cir. 1996) .......... 10

*Schwarzenegger v. Fred Martin Motor Co.*
374 F.3d 797, 802 (9th Cir. 2004) .......... 3

*See DeMay v. Roberts*
9 N.W. 146 (Mich. 1881) .......... 5

*Seitz v. City of Elgin*
719 F.3d 654, 657 (7th Cir. 2013) .......... 4

*Spokeo, Inc. v. Robins*
136 S. Ct. 1540, 1548 (2016) .......... 4

*U.S. v. Lizarraga-Tirado*
789 F.3d 1107 (9th Cir. 2015) ..... 11

*U.S. v. Students Challenging Regulatory Agency Procedures*
412 U.S. 669, 689 n.14 (1973) ..... 5

*U.S. v. Tank*
200 F.3d 627, 630 (9th Cir. 2000) ..... 10

*Universal Semiconductor v. Tuoi Vo*
No. 5:16-cv-04778-EJD, 2016 U.S. Dist. LEXIS 164513, at *6 (N.D. Cal. Nov. 29, 2016) ..... 8

*Universal Semiconductor*
2016 U.S. Dist. LEXIS at 164513 ..... 8

*Van Patten v. Vertical Fitness Grp. LLC*, No. 14-55980, 2017 U.S. App. LEXIS 159 ..... 5

*Williby v. Hearst Corp.*
No. 5:15-cv-02538-EJD, 2016 U.S. Dist. LEXIS 142795, at *5-7 (N.D. Cal. Oct. 14, 2016) ..... 8

**FEDERAL STATUTES**

18 U.S.C. § 2520(a) (2012) ..... 4

45 C.F.R. § 164.514(b) ..... 9

Fed. R. Evid. 901 ..... 10

## I. INTRODUCTION

Plaintiffs' Motion seeks to stop the violation of Plaintiffs' constitutional, statutory, and common law rights to informational privacy relating to their sensitive communications with the health care Defendants (hereinafter "Defendants"). Those Defendants, despite their express promises not to do so, disclose the communications in the form of specific URL communications combined with unique cookie identifiers, unique device identifiers, IP addresses, browser-fingerprint information, geo-location information and other personally identifiable information to Facebook, which is the equivalent of disclosing names, email addresses, and lists of a person's friends.

In response, and without sense of irony, Defendants contend in their Opposition that Plaintiffs' "motion seeks to enjoin nothing more than the routine transmission of information associated with the browsing of public websites." Opp'n 1:5-7. Defendants' position is without merit and is proven so by Defendants themselves. When Plaintiffs served discovery on Defendants which seeks the very same information that those Defendants admittedly disclose to Facebook, all of the Defendants objected (without substantively responding) and asserted, among other things, that the requests sought "Confidential Information" and "Third Party Confidential Information."[1] *See* Declaration of Jeffrey A. Koncius, executed March 6, 2017 (hereinafter "Koncius Decl."), RFP 25 at Exs. A-G. Defendants' own definitions for those objections read, in part, as follows:

- Confidential Information – "information that qualifies for protection under applicable California or federal law, including without limitation trade secrets, proprietary information, other confidential commercial information or sensitive information, or information the disclosure of which is prohibited by federal or state law, rule, or regulation."
- Third Party Confidential Information – "information which Defendant is required to maintain in confidence pursuant to an agreement or understanding with any third

[1] Defendant University of Texas – MD Anderson Cancer Center did not join the other Defendants' uniform objections. Rather, their two-page objection was premised on the pending Motion to Dismiss obviating their need to comply with discovery. *See* Koncius Decl. at Ex. G.

party."

*Id*. In short, Defendants' objections assert that the very information they claim is unprotected public information in briefing before this Court is, in fact, information which they cannot legally disclose to any third-party or the named Plaintiffs in discovery.

While the technology at issue in this case may appear to be complex to the layman, the claims here are simple: (1) Defendants promised not to disclose sensitive communications made on their websites to third-parties, and (2) despite such promises, Defendants disclosed to Facebook communications which are confidential, sensitive, qualify for protection under California and federal law, and which Defendants are required to maintain in confidence. And, again, it is not just Plaintiffs who claim the information has those characteristics; those are the exact phrases used by Defendants to describe the information at issue. This Court has the power to stop the disclosures complained of and it would not be onerous for Defendants to do so. In fact, several Defendants stopped making the disclosures shortly after this case was filed. The issuance of a preliminary injunction will not break the Internet as Defendants suggest. Rather, it will put an end to their cavalier attitude that once an individual is on the Internet, the right to privacy no longer exists.

## II. LEGAL ARGUMENT

### A. The Court Has General, Specific, and Consent Jurisdiction over Defendants

#### 1. <u>General Jurisdiction</u>

A court may exercise general jurisdiction over foreign corporations to hear claims against them when their affiliations with the state are so continuous and systematic as to render them essentially at home in the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). In this case, Defendants have continuously and systematically sent Plaintiffs' sensitive information to Facebook, a California company.[2] This activity is neither random nor isolated, thereby rendering general jurisdiction proper for all Defendants.

In addition to these continuous and systematic communications, several Defendants engage in other continuous and systematic activities in California.[3] Defendant American Cancer Society

[2] Discovery will show whether that information is sent to other Facebook data centers, should any exist.

[3] All except BJC and Adventist have such California contacts but, nevertheless, all Defendants

notes on its website that it provides 2,681 "programs and services to help you manage cancer treatment and recovery" in California.[4] Defendant American Society of Clinical Oncology lists more than 300 members within 50 miles of San Jose.[5] Defendant Melanoma Research Foundation maintains ongoing relationships with the California Pacific Medical Center, UCSF, UCLA, and the Angeles Clinic and Research Center.[6] Defendant Cleveland Clinic maintains an affiliate relationship with Sequoia Hospital in Redwood City.[7] Defendant MD Anderson is a partner in running the Scripps MD Anderson Cancer Center in San Diego.[8]

**2. <u>Specific and Consent Jurisdiction</u>**

Specific jurisdiction exists where a defendant "purposefully direct[s] his activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Further, "parties to a contract may agree in advance to submit to the jurisdiction of a given court[.]" *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964).

In this case, specific and consent jurisdiction exist. First, Defendants directed activities and consummated transactions with the forum and its residents (including Facebook and California citizens). Second, Defendants performed an act by which they purposefully availed themselves and invoked the benefits and protection of California laws. In particular, pursuant to Facebook's Terms of Service, Facebook users, including web-developers and website operators like Defendants, voluntarily submit to this Court's personal jurisdiction for the purpose of litigating all

---

having agreed to this forum as explained herein are now subject to its jurisdiction.

[4] https://www.cancer.org/about-us/local/california.html

[5] http://www.cancer.net/find-cancer-doctor?Distance=3&Gender=All&Languages=All&longitude=-121.88632860000001&latitude=37.3382082&user_latitude=&user_longitude=&user_address=&searchString=&search_term=San+Jose%2C+CA%2C+USA&search_type=location

[6] https://www.melanoma.org/research-center/research-initiatives/mrfbc/participating-sites

[7] http://my.clevelandclinic.org/departments/heart/depts/heart-vascular-affiliates

[8] https://www.mdanderson.org/newsroom/2016/08/scripps-health-and-m.html

claims relating to their relationship with Facebook. *See* Compl. Ex. A at 4; Compl. ¶ 306(e).[9] By agreeing to Facebook's Terms of Service, Defendants have consented to venue and jurisdiction in this Court. Even in the absence of a direct choice of law provision between Defendants and Plaintiffs, the existence of such provisions between Plaintiffs and Facebook, and between Defendants and Facebook establishes jurisdiction because non-parties can be bound by forum selection clauses if the conduct of the non-parties is closely related to the contractual relationship. *See Manetti-Farrow, Inc. v. Gucci American, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007). Clearly, Defendants do more than just operate websites that can be accessed in California.

### B. This Court Has Jurisdiction over MD Anderson

As explained in Plaintiffs' Opposition to the Motion to Dismiss (ECF No. 25, 13:18-14:3), *Franchise Tax Bd. of Cal. v. Hyatt*, 136 S. Ct. 1277 (2016) and *Nevada v. Hall*, 440 U.S. 410 (1979), the Full Faith and Credit Clause demands application of California immunity rules and related statutes. Accordingly, MD Anderson only has immunity if and to the extent California law provides it. However, the California state-law claims against MD Anderson are sufficient under California law. Additionally, by using Facebook's code, MD Anderson affirmatively chose California as the venue for disputes and consented to the application of California law. Finally, the Wiretap Act creates a cause of action against "the person *or entity*, other than the United States, which engaged in that violation." 18 U.S.C. § 2520(a) (2012) (emphasis added); *see Seitz v. City of Elgin*, 719 F.3d 654, 657 (7th Cir. 2013) (noting entity includes government units).

### C. Plaintiffs Have Standing to Pursue their Privacy Claims

To establish Article III standing, a plaintiff must have "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotations omitted). "Concrete" is not synonymous with tangible and such harm may arise from a statutory violation. *Id.* at 1549. Moreover, "an identifiable trifle is enough to fight out a question of principle."

---

[9] In this regard, it is curious that Defendants argue that "Plaintiffs have not alleged that any Defendants entered into a contract with Facebook." Opp'n 7 n.3.

*Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008) (quoting *U.S. v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973)).

Here, Plaintiffs have identified more than an "identifiable trifle." This case involves privacy violations by Defendants in what Defendants themselves refer to as unauthorized disclosure of Plaintiffs' confidential and sensitive information that is protected by California and federal law and which Defendants are required to maintain in confidence.

Further, over a century of common law firmly establishes that Plaintiffs need not plead economic harm to proceed with a privacy tort. *See DeMay v. Roberts*, 9 N.W. 146 (Mich. 1881), *Doe v. Chao*, 540 U.S. 614, 621 (2004) ("[C]ommon law would not require [the plaintiff] to show particular items of injury in order to receive a dollar recovery. Traditionally, the common law has provided such victims with a claim for 'general' damages, which for privacy and defamation torts are presumed damages: a monetary award calculated without reference to specific harm."). Defendants' citations to the contrary are inapposite.[10] By contrast, Plaintiffs cite a number of recent cases finding standing in similar cases. *Van Patten v. Vertical Fitness Grp., LLC*, No. 14-55980, 2017 U.S. App. LEXIS 1591; *In re Horizon Healthcare Servs. Data Breach Litig.*, No. 2-13-cv-07418, 2017 U.S. App. LEXIS 1019 (3d Cir. Jan. 20, 2017); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272-74 (3d Cir. 2016).

Indeed, the Ninth Circuit recently found standing for privacy claims less offensive than those asserted here. In *Van Patten*, a suit based on the TCPA, the Ninth Circuit held the plaintiff had alleged a concrete injury sufficient to confer Article III standing. The court reasoned that

---

[10] *In re Google Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 U.S. Dist. LEXIS 183041 (N.D. Cal. Dec. 28, 2012) involved alleged disclosures of PII to itself through the co-mingling of information that it had previously siloed. *Foster v. Essex Prop., Inc.*, No. 5:14-cv-05531-EJD, 2017 U.S. Dist. LEXIS 8373 (N.D. Cal. Jan. 20, 2017) was a factual challenge to standing in which the Court found plaintiffs' claims "factually impossible." *In re: iPhone App*. involved a dismissal, with leave to amend, where plaintiffs failed to allege any injury to themselves, but to consumers generally. After re-pleading, the Court found the plaintiffs adequately alleged injury to create standing. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1055 (N.D. Cal. 2012). The same is true of *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1021 (N.D. Cal. 2012). *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx), 2011 U.S. Dist. LEXIS 50543 (C.D. Cal. Apr. 28, 2011) similarly found that the plaintiffs did not sufficiently make particularized allegations.

assuming the plaintiff had not consented to receiving the defendant's text messages and phone calls, those communications "present[ed] the precise harm and infringe[d] the same privacy interests Congress sought to protect in enacting the TCPA." 2017 U.S. App. LEXIS 1591, at *11-12. By their unsolicited nature, the communications invaded the privacy and solitude of their recipients. The plaintiff was not required to allege any additional harm beyond that. *Id.* at *12. *See also*, *Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102, 1109 (N.D. Cal. 2010) (standing found for injunctive relief where plaintiffs alleged the website defendant "continue[d] to collect and disseminate the very same type of … data" that initially gave rise to the controversy). The Third Circuit held the same in *In re Horizon Healthcare*, a class case based on alleged violations of the FCRA, where the court explained, "'[U]authorized disclosures of information' have long been seen as injurious . . . . And with privacy torts, improper dissemination of information can itself constitute a cognizable injury." 2017 U.S. App. LEXIS 1019, at *211.

Here, Plaintiffs have alleged privacy violations by Defendants that are ongoing. Based on *Van Patten* and *Horizon*, those violations alone are sufficient to constitute cognizable injury and confer Article III standing. And, contrary to Defendants' argument (Opp'n 9:21-28), the language of both cases suggests they were not intended to be narrowly read in the context of the specific statutes at issue, but within the realm of privacy violations in general.

### D. Plaintiffs Suffered and Continue to Suffer Irreparable Harm

Violation of a fundamental right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (discussing "loss of First Amendment freedoms, for even minimal periods of time"); *Deerfield Med. Ctr. v. Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (noting "the right of privacy must be carefully guarded for once an infringement has occurred it cannot be undone by monetary relief"); *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (finding "an alleged constitutional infringement will often alone constitute irreparable harm").

Health-related information "enjoys the highest expectations of privacy" in the Ninth Circuit. *See Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1270 (9th Cir. 1998) (observing "one enjoys the highest expectations of privacy" in "aspects of one's health"); *Nelson*

*v. NASA*, 530 F.3d 865, 879 (9th Cir. 2008) (finding "Information relating to medical treatment and psychological counseling fall squarely within the domain protected by the constitutional right to informational privacy.").

Where plaintiffs have adequately shown violation of privacy interests, courts in the Ninth Circuit have found adequate grounds for a preliminary injunction. *See Nelson* at 873 (granting preliminary injunction on appeal); *Hawaii Psychiatric Soc., Dist. Branch v. Ariyoshi*, 481 F. Supp. 1028, 1052 (Ha. 1979) ("Irreparable harm to plaintiffs' patients' interest in nondisclosure of personal information would inevitably flow from continued enforcement" of statute authorizing inspection of Medicaid provider's records upon showing probable cause).

Beyond health-related information, the Ninth Circuit has stated that less intrusive privacy violations cause irreparable harm. In *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943 (9th Cir. 2012), the Ninth Circuit upheld the granting of a preliminary injunction where the plaintiffs merely alleged the defendant had placed unwanted calls to his and the class members' cell phones – thereby violating the TCPA. *Id*. at 951. There the Court found adequate facts for the issuance of an injunction where the activity "violate[d] the class members' right to privacy" and the defendant would "continue to violate the TCPA if an injunction was not issued." *Id*. Here, Defendants have violated Plaintiffs' right to privacy and, based on Defendants' Opposition, have made it plain that they will continue to do so if an injunction is not issued.

**E. Delay Alone Does Not Defeat a Claim for Injunctive Relief**

Although the timing of a request for injunctive relief may be considered, delay alone is not sufficient to deny such a motion. *Gilder v. PGA Tour, Inc*., 936 F.2d 417, 423 (9th Cir. 1991) (citing *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1984) ("delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief . . . . We would be loath to withhold relief solely on that ground, but we do give that fact consideration in measuring the claim of urgency.")). Indeed, none of the cases cited by Defendants (Opp'n 11:5-19) rely exclusively on delay to deny an injunction. *See, e.g.*, *Garcia v. Google, Inc*., 786 F.3d 733, 744-46 (9th Cir. 2015) (holding no showing of irreparable harm as alleged injury was too attenuated from copyright purposes while noting delay); *Universal Semiconductor v. Tuoi*

*Vo*, No. 5:16-cv-04778-EJD, 2016 U.S. Dist. LEXIS 164513, at *6 (N.D. Cal. Nov. 29, 2016) (denying request because claim of harm was not irreparable and entirely speculative, the injuries were mere money, time and energy and there was a delay); *Williby v. Hearst Corp*., No. 5:15-cv-02538-EJD, 2016 U.S. Dist. LEXIS 142795, at *5-7 (N.D. Cal. Oct. 14, 2016) (finding no entitlement for extraordinary relief where alleged injury was primarily monetary, speculative and not irreparable and request was delayed); *Hanginout, Inc. v. Google, Inc*., 54 F. Supp. 3d 1109, 1131-33 (S.D. Cal. 2014) (rejecting request for failing to produce "nonspeculative evidence" of loss or projected loss in addition to delay); *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376-78 (9th Cir. 1985) (observing anticipated gains and estimated losses were speculative, no new harm was imminent and there was a delay). Further, Defendants' argument on timing fails to cite any case dealing with a claim at which a privacy right is at issue. *See*, *Garcia*, 786 F.3d at 733 (trademark infringement); *Universal Semiconductor*, 2016 U.S. Dist. LEXIS at 164513 (transfer of patented proprietary technology); *Williby*, 2016 U.S. Dist. LEXIS at 142795 (defamation and intentional interference with prospective economic relations); *Hanginout*, 54 F. Supp. 3d at 1109 (trademark infringement); *Oakland Tribune*, 762 F.2d at 1374 (Sherman Act violation).

Based on Facebook and other defendants' conduct in other Internet privacy lawsuits, Plaintiffs frankly expected that the offensive behavior would immediately cease. Indeed, certain Defendants here did in fact stop the conduct complained of; whereas others initially ceased the practice, only to restart it a short time later. Once it became clear that the conduct was not going to stop and continued damage was certain, Plaintiffs filed for injunctive relief.

### F. Libert's Declaration Is Admissible and Uncontroverted

Although more than once Defendants represented to this Court that they needed time to depose Plaintiffs' expert and retain their own experts (*see* Defs.' Opp'n to Pls.' Administrative Mot. to Shorten Time , ECF No. 121, 5:17-22; Rabkin Decl. in Support of Admin Mot., ECF No. 146-1, ¶¶ 8-9), Defendants did neither of those things. Rather, they submitted an unsupported

Opposition misquoting Mr. Libert, attempting to suggest he is improperly giving a legal opinion,[11] and otherwise engaged in ad hominem attacks while doing nothing to refute his now unopposed expert opinion that: (1) Defendants are sharing the confidential information as alleged and (2) Defendants have the ability not to do so if they so choose. Mr. Libert's expert opinion, the only one before this Court, is scientifically sound, admissible, and uncontroverted.

Defendants claim Libert's testimony is inadmissible because (1) webXray has not been shown to be reliable; and (2) his opinion was prepared after filing of the action. Both arguments fail.

Admissibility of log printouts of electronic communications is governed by Rule 901 of the Federal Rules of Evidence relating to authenticity and identification. Under Rule 901(a), "The [proponent] need only make a prima facie showing of authenticity, as the rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could

---

[11] Of course, the admissibility of the Libert declaration is not for any supposed legal opinion. Obviously, Mr. Libert is neither an attorney nor the trier of fact. And, despite making this dubious assertion, later in their brief, Defendants argue that Mr. Libert's previous statements about the legality of Defendants' offensive behavior is admissible and negates Plaintiffs' claims. The Court should ignore Defendants' two-faced argument.

In support of their claim that Libert makes legal proclamations, Defendants point to paragraphs 37, 43, and 49-50 of his Declaration. But those citations are red herrings. In paragraph 37, Libert states that his software showed Defendants transmitted referer data that contained "sensitive medical content" which thereby "reveal[ed] the medical concerns of users[.]" For example, a referer header from Defendant BJC contained the following: www.barnesjewish.org/...Content...=ColorectalCancerRisk. Defendants' suggestion that this disclosure is not medical, sensitive, or revealing is absurd and contradicted by their own objections to discovery. In paragraph 43, Libert merely states a fact to which Defendants cannot reasonably object – that, "The [Defendants] provide sensitive health care services and information to patients and other users with whom they communicate." In paragraph 49, Libert states that Defendants' websites "disclose the content of user HTTP requests to Facebook connected to Facebook cookies and other information that is both personally-identifiable to Facebook and deemed personally-identifiable information *based on my understanding of HIPAA*." In paragraph 50, Libert further explains that, "*Based on my reading* of the relevant HIPAA code sections, *my understanding* is that, under HIPAA, individual 'identifiers' include names, geographic subdivisions smaller than a state, device identifiers and serial numbers, URLs, IP addresses, and any other unique identifying number, characteristic or code." He then cites 45 C.F.R. § 164.514(b). Defendants are correct that this Court must not take Libert's word to determine whether these particular identifiers are covered by HIPPA. Instead, the Court merely needs to read 45 C.F.R. § 164.514(b), which lists the very identifiers stated by Libert that Defendants disclose to Facebook.

find in favor of authenticity or identification." *U.S. v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (internal quotes omitted). In *Tank*, the Ninth Circuit ruled electronic communications logs admissible when their creator "explained how he created [them] with his computer" and "stated that the printouts … appeared to be an accurate representation." *Id.*[12] Further, Rule 901(b) sets forth a non-exhaustive lists of methods to satisfy the rule including: "[t]estimony that an item is what it is claimed to be[,]" and "[e]vidence describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(b)(1), (9).

In this case, Libert's Declaration establishes how the communication logs in Exhibit A to his declaration were created and that they were accurate representations of those communications. *See* Libert Decl. ¶¶ 26, 41. Libert has explained how webXray works and that its programming code "is open source, meaning anyone is able to view it." Libert Supp. Decl. ¶¶ 3, 4.

Libert's use of webXray and the results derived from its use are also admissible under Rule 702 of the Federal Rules of Evidence. Though not commercially available, webXray is peer-reviewed.[13] Libert Supp. Decl. ¶ 5. It was used in a study published in the oldest and one of the leading computer science journals and has been cited by more than 20 subsequent scientific publications. Libert Supp. Decl. ¶ 5. It has also been used and relied upon by independent computer scientists and journalists. Libert Supp. Decl. ¶¶ 6-7. Further, because it is open source, anyone (including Defendants, their counsel and any experts they eventually retain) are able to test its accuracy.

Just as important, Libert explains that he "performed initial analysis with webXray to

[12] *See also Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1154 (C.D. Cal. 2002) (admitting computer printout evidence and following *Tank* finding that "computer printouts [were] the only practical method by which the allegations of the complaint [could] be brought before the Court" and explaining "there is generally a reduced evidentiary standard in preliminary injunction motions").

[13] *See Roback v. VIP Transport, Inc.*, 90 F.3d 1207, 1215-16 (7th Cir. 1996), reversing exclusion of expert testimony based on a computerized recording device constructed by the proferred expert that "put together the hardware," "designed the software," and was with the exception of a doctoral student, the only person who had ever used them. The Court explained that the expert's data was subject to examination and independent verification, and should have been admitted under Rule 702 despite the unique nature of his recording device.

determine what websites had code on them which would initiate HTTP requests to Facebook-controlled servers." Libert Supp. Decl. ¶ 8. "Only this initial step used webXray," as Libert then "*manually verified* the HTTP traffic and page source code *by using the Google Chrome web browser*." *Id*. Libert set out this "manual inspection is both laborious, highly precise, and uses the exact same software as over half of all web users according to StatCounter." *Id*. Defendants have not and cannot credibly challenge the admissibility of computer data generated by Google Chrome. *See U.S. v. Lizarraga-Tirado*, 789 F.3d 1107 (9th Cir. 2015) (upholding admissibility of evidence generated through Google Earth).

Likewise, that Libert gathered evidence after the filing of Plaintiffs' Complaint does not render the evidence from webXray and Google Chrome inadmissible. In *Roback*, the expert utilized his unique, completely untested, and closed source hardware and software after the filing of the complaint. In this case, Libert also performed work for Plaintiffs prior to the filing of the Complaint. Libert Supp. Decl. ¶ 8 ("In or about December 2015, Plaintiffs' counsel first contacted me regarding my ability to analyze the presence of third-party HTTP requests on hospital websites. Since then, I have performed work related to this case.").[14] Defendants' baseless attacks should be ignored and Mr. Liberts's uncontroverted opinions admitted.

### G. Plaintiffs' Claims Involve Protected and Sensitive Information and Defendants Admit that they Have a Duty to Keep that Information Private

As set out above, Defendants' own discovery responses assert that the information which they shared with Facebook is "Confidential Information" and "Third Party Confidential Information" that "qualifies for protection under applicable California or federal law," is "sensitive information," is "information the disclosure of which is prohibited by federal or state law, rule, or regulation," and is "information which the Defendant[s] [are] required to maintain in confidence pursuant to an agreement or understanding with any third party." Furthermore, as already explained in Plaintiffs' moving papers, this information is confidential and protected under HIPAA. Pls.' Mot. 8:15-10:8, *see also* MTD Opp'n 16:14 – 17:4.

---

[14] In addition, Plaintiffs' counsel performed other prefiling analysis to confirm the allegations before this case was filed. *See* Koncius Decl. ¶ 2.

### H. Plaintiffs did not Consent

Under HIPAA and California Civil Code Section 1798.91, Defendants' arguments that Plaintiffs consented fail because Defendants did not obtain the express, written, or knowing consent from Plaintiffs before disclosing the communications. Further, in their pending Motion to Dismiss ("MTD"), Defendants said the question on consent was: "Would a reasonable user who viewed the defendants' disclosures have understood that Facebook was collecting the information at issue?" MTD, 18:12-19 (citing *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014)). But the question in this case must take the privacy policies of Facebook and Defendants into account and instead ask: "Would a reasonable user who viewed Defendants' disclosures have understood that Defendants were disclosing users' sensitive communications and PII to Facebook?"

Plaintiffs urge the Court to read the actual privacy policies of Defendants.

- ACS explicitly promises, "We do not disclose [PII] to those operating linked sites."
- ASCO promises to "only disclose[ ] your PII to third-parties" under a discrete list of seven circumstances, none of which have been cited by Defendants or apply here.
- MRF promises it does not "sell or share your Personal Data [defined as data that allows someone to identify or contact you] with Third Party Companies."
- Adventist promises, "As a general rule, we will not disclose your [PII] to any unaffiliated third party".
- BJC does not have a clearly marked privacy policy, but promises on a "HIPAA" page that, "We are required by law to protect the privacy of your protected health information" and does not disclose anywhere that user communications are purposefully disclosed to any entity other than with related organizations.
- Cleveland Clinic promises it "does not share any [PII] of any individual with any third party unrelated to Cleveland Clinic, except in situations where we must provide information for legal purposes or investigations, or if so directed by the patient through a proper authorization."
- MD Anderson promises, "Under no circumstances will we ever disclose (to a third party) personal information about individual medical conditions or interests, except when we believe in good faith that the law requires it."

*See* Compl. Exs. F – L. Further, Facebook's policies and promises do not disclose that it collects information in violation of other websites' privacy policies nor that it collects information from medical websites, including covered entities under HIPAA, or that it sells advertising based on

medical categories. No reasonable user could read these privacy policies and conclude Defendants were disclosing sensitive communications and PII to Facebook.

### I. Plaintiffs Adequately Allege Wiretap Claims

Plaintiffs have adequately alleged their state and federal Wiretap claims. The elements for a wiretap claim, which have been satisfied, are set out in the moving papers and will not be repeated here. Defendants argue that Plaintiffs' state and federal Wiretap claims fail because (1) Plaintiffs concede that Defendants were parties to the communications and (2) Plaintiffs do not contend that Facebook acted tortiously. Defendants' arguments are without merit. Since inception of this action, Plaintiffs have alleged that Facebook was not a party to the communications at issue. Plaintiffs were unaware that Facebook was surreptitiously tracking their communications and Facebook did not have Plaintiffs' consent to acquire these communications with Defendants in violation of those Defendants' explicit privacy promises. These allegations are sufficient to support Plaintiffs' Wiretap claims.

Furthermore, Plaintiffs adequately demonstrated that Defendants acted tortiously. As the Ninth Circuit explained in *Sussman v. ABC*, "[u]nder §2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception – *its intended use* – was criminal or tortious . . . . " 186 F.3d 1200, 1202 (9th Cir. 1999). Regardless of the particular method used by Defendants (Internet tracking and disclosing via source code, content, and PII), the nature of the information exchanged makes it tortious because the unauthorized acquisition and disclosure of sensitive health information is itself criminal and tortious.

### J. Defendants Post-Filing Conduct Is Intentional; Discovery Will Show Whether Pre-Filing Conduct Was as Well

The moving papers demonstrate that Defendants' post-filing conduct is intentional. Indeed, post-filing, certain Defendants are still disclosing information to Facebook. These Defendants include American Cancer Society, Melanoma Research Foundation, Adventist Health System (albeit for a minority of its websites), BJC Healthcare, and MD Anderson (via disclosure to Liverail). Libert Decl. ¶¶ 26-28. Furthermore, after the filing of this action, Adventist deliberately removed Facebook source code that causes the disclosures at issue, but then deliberately re-

enabled it. Libert Decl. ¶ 32. In order to determine whether Defendants' pre-filing disclosures were intentional, discovery on this issue is required, as Plaintiffs stated in their moving papers.

**K. The Balance of Equities Favors Injunctive Relief**

If this Court were to grant the preliminary injunction, the "harm" to the Defendants is negligible. Facebook coding is not necessary for Defendants' websites to function. Removing the coding is not onerous and links to Facebook still could be maintained on the sites – albeit without the illegal sharing. Libert Decl. ¶ 53; Libert Supp. Decl. ¶ 9. It would also be simple for that code to be maintained and, in fact, Mr. Libert opines it would be easier to do so. Libert Supp. Decl. ¶ 9. The world of commerce and health care existed prior to the Facebook "Like" or "Share" buttons. It will continue to function for Defendants if this Court orders them to forego sharing sensitive information about the persons with whom they communicate. On the other hand, failing to grant the preliminary injunction would result in further irreparable injury to Plaintiffs by permitting violation of their fundamental rights to privacy. The balance tips sharply in Plaintiffs' favor.

**L. The Public Interest Favors Injunctive Relief**

Plaintiffs agree with Defendants that this Court must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Opp'n 22:14-15. Defendants claim an injunction would "limit" others "from being able to freely 'Like' and share content on Defendants' websites, restricting the flow of helpful and valuable information online." Opp'n 22:22-25. This is untrue. *See* Libert Decl. ¶ 53. It is possible for a company to place a Facebook Like or other sharing tool on its webpage without disclosing PII about every one of its users to Facebook. *See* Libert Supp. Decl. ¶ 9. It is risible for Defendants to claim otherwise. For example, the website for Defendant Cleveland Clinic currently includes Facebook functionality that would allow a user to "Like" or "Share" a page with others – but that does not automatically disclose communications and PII from every user to Facebook. Libert Decl. ¶¶ 30, 53.

Undeterred, Defendants remarkably suggest that any future disclosures are Plaintiffs' fault for not employing blocking software when Defendants have already promised not to disclose PII to third-parties. Under Defendants' logic, it is Plaintiffs' fault for being so naïve as to actually believe Defendants' promises. Further, after suggesting it would be difficult for Defendants to

remove coding that some have already removed from their websites, it is also disingenuous for Defendants to suggest it would be a "simple solution" for Plaintiffs to download and employ "Ghostery" or "Ad Block Plus" when, again, Defendants themselves promise not to disclose the information in the first instance.

More importantly, the public interest greatly favors an injunction in this case. In June 2016 during the pendency of this case, Facebook signed an open letter urging members of Congress to oppose amendments to federal law which would allow for unauthorized tracking of the IP addresses visited by a person and "a person's browsing history"[15] which the letter noted "could reveal details about a person's political affiliation, medical conditions, religion, substance abuse history, [or] sexual orientation[.]" Facebook calls the information "sensitive" and warned that the proposal raised "civil liberties and human rights concerns[.]" https://www.ccianet.org/wp-content/uploads/2016/06/ECTR-Coalition-Letter-6-6-1.pdf.

Plaintiffs agree with Facebook and such continuing disclosure more than satisfies the irreparable harm requirement. The stakes for privacy are high in this case. If health-related communications that a party promises to keep private are not capable of protection in American courts, then not much else is either. If the Court rules against Plaintiffs, it will effectively kill any hope of privacy on the Internet. On the other hand, if the Court rules in favor of Plaintiffs, it will join a growing list of courts who applied old concepts on consent and privacy to new technology. *See e.g., In re: Google Cookie, In re: Nickelodeon, Opperman v. Path, In re Horizon Healthcare*.

## III. CONCLUSION

For the foregoing fact and reasons, and those set out in the Moving Papers, it is respectfully submitted that the requested preliminary injunction should be issued.

DATED: March 6, 2017

**KIESEL LAW LLP**

By: */s/ Jeffrey A. Koncius*
Paul R. Kiesel
Jeffrey A. Koncius
Nicole Ramirez

---

[15] Plaintiffs note the proposal would not have allowed tracking of full-string URLs like those at issue in this case. Instead, it would have allowed tracking of IP addresses which would reveal the website but not necessarily the detailed communication including the specific page.

**THE GORNY LAW FIRM, LC**
Stephen M. Gorny [Admitted *Pro Hac Vice*]
*steve@gornylawfirm.com*
Chris Dandurand [Admitted *Pro Hac Vice*]
*chris@gornylawfirm.com*
2 Emanuel Cleaver II Boulevard, Suite 410
Kansas City, MO 64112
Tel.: 816-756-5056
Fax: 816-756-5067

**BARNES & ASSOCIATES**
Jay Barnes [Admitted *Pro Hac Vice*]
*jaybarnes5@zoho.com*
Rod Chapel [Admitted *Pro Hac Vice*]
*rod.chapel@gmail.com*
219 East Dunklin Street, Suite A
Jefferson City, MO 65101
Tel.: 573-634-8884
Fax: 573-635-6291

**EICHEN CRUTCHLOW ZASLOW & McELROY**
Barry. R. Eichen [Admitted *Pro Hac Vice*]
*beichen@njadvocates.com*
Evan J. Rosenberg [Admitted *Pro Hac Vice*]
*erosenberg@njadvocates.com*
Ashley A. Smith [Admitted *Pro Hac Vice*]
*asmith@njadvocates.com*
40 Ethel Road
Edison, NJ 08817
Tel.: 732-777-0100
Fax: 732-248-8273

**THE SIMON LAW FIRM, P.C.**
Amy Gunn [Admitted *Pro Hac Vice*]
*agunn@simonlawpc.com*
800 Market St., Ste. 1700
St. Louis, MO 63101
Tel.: 314-241-2929
Fax: 314-241-2029

**BERGMANIS LAW FIRM, L.L.C.**
Andrew Lyskowski [Admitted *Pro Hac Vice*]
*alyskowski@ozarklawcenter.com*
380 W. Hwy. 54, Ste. 201
Camdenton, MO 65020
Tel.: 573-346-2111
Fax: 573-346-5885